## BROWN VS. HEBARD.

*Supplementary proceedings—Judgment debtor's earnings for sixty days— When exempt.*

1. Sec. 94, ch. 134, R. S., is so far modified by ch. 148, Laws of 1858 (R. S. p. 799), as amended by ch. 280, Laws of 1861, that the order of a judge or court commissioner applying property of a judgment debtor, in his own hands or those of another person, to the satisfaction of the judgment, cannot include his earnings for sixty days before the making of the order, if such judgment *debtor* be a married person, or one charged with the entire support of a family.

2. The act of 1858 applies to all *persons who support themselves and families by the labor of their hands,* without regard to the grade or character of such labor.

3. A judgment debtor was employed in a chamber of commerce to inspect flour when requested by merchants, who paid him a certain sum per barrel. He employed by the week a deputy inspector, a laborer and a book-keeper, but inspected daily himself, passing upon every sample; and his net income from this source was about $2,500 per annum. *Held,* that the net proceeds of his business were *earnings,* within the meaning of said act.

DOWNER, J., dissents.

APPEALS from the Circuit Court for *Milwaukee* County.

Plaintiff recovered judgment against defendant for $424.48 and execution was issued and returned *nulla bona.* An order of discovery was thereupon granted by a court commissioner, and served August 10th, 1865, and defendant's examination disclosed that he was flour inspector in the chamber of commerce in the city of Milwaukee; that it was his business, when requested by merchants, to inspect flour and determine its grade; that he employed one person as deputy inspector, one la-

borer to handle the barrels and perform the rough work, and a book-keeper, paying the first $12, and each of the others $9 per week; that he received for each barrel of flour inspected two cents, with the drawings, worth one half of one cent; that the number of barrels he inspected was from two to five thousand per week, and the net proceeds of his business for one year next preceding such examination was about $2,500; that the persons for whom he inspected flour paid him every week; that he had received no payments for inspection for the three days previous to the service of the order, but $27.32 was due him August 10th from different parties for flour inspected during those three days, and he had on hand about 200 lbs. of flour drawn therefrom, and six or seven dollars in money, when the order was served; and that he had a wife, and her mother and sister were in his family, and it took $18.50 per week to support the family. The commissioner, on the 12th of August, appointed a receiver of all the property &c. of the defendant, and the gross earnings of his business to August 10th; and on the 14th he ordered the defendant to deliver to said receiver the $27.32, and the 200 lbs. of flour above mentioned and $6.50 in money. On the 18th of August the receiver reported that he had received from defendant $40.65, and the commissioner directed the receiver to pay back to defendant $15 for the services of his employees during the three days, $4.59 for expenses of his business, and $9.25 for the support of his family. On a subsequent examination upon a second order of discovery, the defendant answered: "I inspect the flour myself, daily, plug the barrels, and do as much labor as any of the employees. * * The business was carried on without my presence when I was sick, although samples were brought to me to be examined. I do the actual inspection of flour myself, and pass upon every sample. I did all this when I was sick, especially when the deputy had any doubt. I do not know that he passed upon any flour without my seeing the samples. I determine the quality of the flour by standards

furnished me by the chamber of commerce, by which I inspect.
*   *   It is the deputy's duty to run through the flour and determine whether it is all of one grade. I determine from the sample brought me its quality compared with the standard.
*   *   I began in a mill when I was seventeen years of age, and have been in the business of handling flour ever since. Such experience is essential to the performance of the duties of an inspector. I put on the barrels the mark of the different grades. My name is put on the brand also of each barrel. *
*   Business men seem to think my reputation has something to do with the value of the flour.   *   *   I could inspect four or five hundred barrels of flour alone in a day, if it lay where I could reach it handy. My employees and I could inspect a thousand.   *   *   The skill of the inspector has something to do with the merchantable value of the flour." It further appeared that the defendant had received, since his previous examination, $36.00 in excess of the expenses of his business and the necessary expenses of his family; and the commissioner directed him to deliver that amount to the receiver. Afterwards the circuit court set aside all the above orders, excepting that of August 12, and also set aside so much of that as authorized the receiver to take possession of the gross earnings of defendant's business to 10th August. From this order of the court the plaintiff appealed.

*Samuel Howard*, for appellant, contended that sec. 94, ch. 134, R. S., was not repealed by ch. 148, Laws of 1858, there being no express repealing clause, and repeals by implication, not being favored; that the latter was designed merely to exempt the earnings of mechanics and laborers (the original act being entitled " An act to exempt sixty days' earnings to mechanics and laborers"); that the defendant did not belong to those classes (Webster's Dic., *sub verbis*); and that, in any event, a distinction should be made between the earnings of a person and the earnings of his *business*. The orders of the commissioner merely appropriate the earnings of the defendant's busi-

ness. The law was intended to protect the employee, the laborer, and not the employer.

*Byron Paine, contra,* argued that the defendant was a "laborer," within the meaning of that word as used in the title to the act of 1858 ; that the language of the body of the act removed all doubt upon the subject, as that exempted in the first instance "all persons," and as amended in 1861, "all married persons" &c. ; and the title is not to control the clear language of the act. *U. S. v. Fisher,* 2 Cranch, 202, [358]. The fact that the defendant employed others to help him do his work does not take his case out of the statute. That is the case with many laborers. Men who dig wells, move houses, or in fact do any kind of work requiring more than one person at a time, are compelled to employ others to help them. This is often the case with mechanics, who are named in the title of this act. In all such cases, where the party works also himself, he is within the statute, and his earnings consist of what he receives for the entire work, after deducting what he has to pay his employees.

DIXON, C. J. Section 94 of chapter 134, R. S., provides that in proceedings supplementary to execution, the judge may order any property of the judgment debtor, *not exempt from execution,* in the hands either of himself or any other person, or due to the judgment debtor, to be applied toward the satisfaction of the judgment, except that the earnings of the debtor *for his personal services* at any time within sixty days next preceding the order, cannot be so applied when it is made to appear, by the debtor's affidavit or otherwise, that such earnings are necessary for the use of a family supported wholly or in part by his labor. At the time this statute was enacted, the earnings of the debtor were not exempt from attachment, garnishee process, or seizure and sale upon execution. Subsequently the act of 1858 (chapter 148, R. S., p. 799) was passed, which, as amended by chapter 280, Laws of 1861, declares that

the *earnings* of all married persons, or persons who have to provide for the entire support of a family in this state, for sixty days next preceding the issuing of any process from any court of record or justice of the peace against them, shall be exempt from levy, seizure or sale upon such process ; and the same shall not be liable to be garnisheed, or seized by attachment, or levied upon by execution, or sold on any final process issued from any court of his state. This last act worked a repeal or modification of section 94, so far as it is inconsistent with that section.   By extending the exemption from execution to the earnings of a certain class of debtors for the period of sixty days, absolutely, it rendered the latter clause of section 94, as to the earnings to be excepted &c., wholly inapplicable to that class of debtors.   Debtors of the new class become absolutely entitled to the exemption of their earnings for the period of sixty days under the first clause of the section, by which the power of the judge is limited to the application of the property of the judgment debtor, *not exempt from execution.*

A question is made as to the application of the act of 1858. I have no doubt it includes all persons who support themselves by the labor of their hands, without regard to the grade of such labor or the degree of skill and experience required in its performance.   I think the act is applicable to the case of the present defendant, who is shown to be a debtor of the class provided for by it.

The question then is as to the meaning of the word "earnings," as found in the act of 1858, without the qualifying words contained in section 94.   It is not easy, perhaps, to determine the precise application of this word as used in the statute.   I think a correct definition to be, the gains of the debtor derived from his services or labor without the aid of capital.   If the debtor has no capital and no credit contributing to increase his profits, except the credit arising from the labor or service in which he is presently engaged and out of the proceeds of which his obligations on account of such labor or service are to be

discharged, then I think his net receipts or gains from such labor or service may fairly be accounted "earnings." If, for example, the man whose business it is to dig a well, sink a mine, erect a house, run a raft of lumber or a ferry-boat, or to perform any of the numerous kinds of work in which the assistance of others is necessary, employs others, as he must do, to assist him, and who are to be paid as he himself is paid, out of the proceeds of the work, it seems to me that what remains after the others are paid must be regarded as his " earnings." We all know that there are many men who have a peculiar skill and adaptation to these different kinds of labor—who, from long application and experience, are qualified to assume the management and control of them and of others engaged in them, and when they do so, under the circumstances stated, why may not their gains, increased perhaps beyond the gains of others who have no skill and experience, be said to be the result of their personal services. I must say that I think they are the " earnings "—the fruits of the proper skill, experience and industry—of the persons to whom they belong.

These observations are applicable to and dispose of this case. The net proceeds of the defendant's services as flour inspector, after the payment of his employees, were his " earnings," and as such were exempt within the period fixed by the statute.

*By the Court.*—The order of the circuit court is affirmed. DOWNER, J., dissents.