## BARTELDES SEED CO. v. GUNN et al.

No. 7745—Opinion Filed Oct. 17, 1916.

(159 Pac. 502.)

**1. Exemptions—Property Exempt — Earnings.**

Under subdivision 16 of section 3342, Revised Laws of 1910, all current wages and earnings for personal or professional services earned within the last 90 days is reserved to the head of every family residing in the state, exempt from attachment or execution, and every other species of forced sale for the payment of debts.

**2. Same.**

Under section 5199, Revised Laws of 1910, the earnings of a debtor, who is a resident of this state, for his personal services at any time within three months next preceding the issuing of an execution, attachment, or garnishment process, cannot be applied to the payment of his debts when it is made to appear, by the debtor's affidavit or otherwise, that such earnings are necessary for the maintenance of a family supported wholly or partly by his labor.

**3. Same.**

The object of these statutes is to give to the head of a family his current wages or his personal earnings in whatsoever manner acquired for his personal services earned within the time specified by the statute, and he is entitled thereto, although his wages or his earnings for his personal services may be reserved to him under a contract, whereby he is to receive so much for the job performed.

(Syllabus by Hooker, C.)

Error from County Court, Canadian County; R. B. Forest, Judge.

Action by the Barteldes Seed Company against C. E. Gunn and others. Judgment for defendants, and plaintiffs bring error. Modified and affirmed, with directions.

E. F. Maley, J. N. Roberson, and McLaury & Hoops, for plaintiff in error.

D. F. Carl, for defendants in error.

Opinion by HOOKER, C. The plaintiff in error recovered judgment against C. E. Gunn in the county court of Canadian county in April, 1915, for the sum of $231.29. Thereafter, in order to enforce the collection of said judgment, it sought to subject thereto a debt due by the Stiles Construction Company to C. E. Gunn.

It appears from the evidence here that on February 16, 1915 the said Gunn made a contract with the Stiles Construction Company whereby he obligated himself to do all the hauling required in the erection of the post office at El Reno, for which he was to receive so much per 1,000 tons or yards as the case might be, and in order to carry out the provisions of his contract he employed other parties to assist him in said hauling, and at the time of the service of the garnishment herein there was due by him to several parties moneys for their services in aiding him in the performance of said contract. It further appears that the construction company owed him about $113 which the plaintiff in error attempted to subject to the satisfaction of its debt. It is asserted here by Gunn that, at the time of the service of the garnishment herein he was a resident of this state with a family dependent upon him for support, and that the money attempted to be subjected here constitutes his earnings for his personal services within three months next preceding the service of said garnishment, and that for these reasons the fund due him by the Stiles Construction Company is not subject to the garnishment issued in this cause, while it is asserted by the plaintiff in error that all of said fund is subject to garnishment for the reason that the sum is due under a contract for the services of Gunn and others, and that Gunn is not entitled to claim the same as exempt. The record here discloses that Gunn made no profit from the labor of others, and the parties performing services were to receive from him the same pay as he himself received, and they are not parties to this appeal.

It appears from an examination of our statute (section 3342, subd. 16) that:

"All current wages and earnings for personal or professional services earned within the last ninety days" "shall be reserved to the head of every family residing in the state exempt from attachment or execution and every other species of forced sale for the payment of debts."

And it further appears from section 5199 that:

"The earnings of a debtor, who is a resident of this state, for his personal services at any time within three months next preceding the issuing of an execution, attachment or garnishment process, cannot be applied to the payment of his debts when it is made to appear by the debtor's affidavit or otherwise that such earnings are necessary for the maintenance of a family supported wholly or partly by his labor," etc.

Under these provisions of the statute Gunn asserts that this money involved here is not subject to garnishment. It cannot be contended that this money is due him for wages, inasmuch as the evidence conclusively shows that the money is due for services performed by Gunn and others in the performance of his contract with the Stiles Construction Company, and, if he is entitled to the same as exempt, it must be under the other provisions of the statute for earnings for personal services, as there can be no claim for professional services involved here. Clearly the object of this statute is to give to the head of a family his current wages and his earnings in whatsoever manner acquired for his personal services earned within the time specified within the statute. The court cannot extend it beyond the time nor beyond the purposes for which the statute intended to protect the head of the family, and if there should be any doubt whatever, as to the application of the statute to the fund in question, that doubt should be resolved in favor of the claimant. However, the courts cannot give to statutes of this character an application which the Legislature did not intend should be extended to it.

Under the evidence here Gunn performed some of the services for which this money was due by the construction company to him, and the same clearly constitutes his earnings, and, as we view the law, it is absolutely immaterial how the pay may be reserved to him, whether so much by the day, or week, or month, or so much for the job, it nevertheless constitutes his earnings for his personal services out of which he is entitled to his exemptions. However, for that part of the fund due by the Stiles Construction Company to him for services performed by others, we are of the opinion that he is not entitled to claim any exemptions therefrom, as many elements may enter into the same other than the personal services of Gunn, and the object of the statute, we think, is to exempt the earnings for personal services as contradistinguished from the income arising from a business involving other elements of gain; and it is clearly evident that the contract feature of the services performed by others involved many elements of profit aside from the mere personal earnings of Gunn.

The Supreme Court of Pennsylvania, in Smith v. Brooke, 49 Pa. St. 150, said:

"Dr. Smith employed [Adam] Hipple, a

master carpenter, to build a house, and agreed to pay him $1.50 the day for his own labor, and $1.00 a day for each of his hands, and, from this per diem of the hands, Hipple was to receive assessments varying from 5 to 50 cents a day for each hand, according to the degree of supervision they would respectively require. On the trial of the cause, the per diem for Hipple's own labor was ascertained to amount to $463.50—a fund which the court held to be exempted from attachment—execution by the Act of Assembly of June 16, 1836. * * * The assessments on the wages of the hands amounted to another fund of $493.37, which the court held to be liable to attachment; and the two first errors assigned raise the question whether the court erred in holding this latter fund to be subject to attachment.

"Both in Heebner v. Chave, 5 Barr. 117, and in Costello v. The Coal Co., 9 Casey, 241, 'the 'wages of laborers,' which the statute was designed to protect, were defined to be the earnings of the laborer, by his personal manual toil, and not the profits which the contractor derives from the labor of others. The cases illustrate the distinction between the two kinds of gains or rewards. It is the difference between the sale of your own labor, and a sale of another man's labor, at something more than you pay for it. What is received for another's labor over and above what is paid for it is called 'profit,' and such profits were held not to be within the protection of the statute.

"We think this ruling was right. The statute secures to the laborer and his family the earnings of his own hands, but this is its full extent and scope. If it were carried farther by judicial decision, it would be hard to assign a limit to its operation. The profits of every enterprise might be called the wages of labor, with no great violence to language, and thus the collection of debts be abolished in many instances where ample means of payment existed. The Legislature meant nothing so unreasonable and extravagant. They only meant that what a man earned by his personal labor should not be intercepted by his creditors, but should go to supply the wants of himself and family, leaving whatever other moneys might be due to him to be seized for his debts."

Also, the Supreme Court of Wisconsin, in Kuntz v. Kinney et al., 33 Wis. 512, said:

"The principal question arising in the case is one of considerable interest and importance to a large class of laborers, namely, whether the moneys garnished were exempt as the 'earnings' of the debtor under our statute. Section 40, c. 134, Tay. Stats., provides that the earnings of all married persons, or persons who have to provide for the entire support of a family in this state, for 60 days next preceding the issuing of any process from any court of record or justice of the peace against them, shall be exempt from levy, seizure, or sale upon such process; and the same shall not be liable to be garnished on attachment or

other process. The debtor in this case was a married man, and had a family to support. The garnishees were indebted to him when served, with process, in the sum of $19.93, for six days' work recently performed by him with his team in hauling lumber and wood. It appears that the debtor's services per day were worth without a team $1.50, while, working with his team, he could earn more than double that amount. The municipal court held that it was only the personal earnings of the debtor which were exempt, and that the balance which the team earned must be applied to the payment of debts. The circuit court reversed this judgment, holding, as we suppose, that not only the produce of the debtor's own industry was exempt, but also the earnings of his team. We fully agree with the circuit court in this construction of the statute.

"We assume, as we think we have the right to, upon the facts disclosed, that the debtor had but one team, and that the debt due him by the garnishees was for work performed by him and his team in hauling lumber and wood; in other words, that the debt was the gross earnings of the laborer, and of his team, itself exempt property. * * * And it seems to us that whatever the debtor—being a married person and having a family to support—may earn with his exempt team, wagon, or dray, and tackle, may fairly be considered as constituting 'the earnings' which are exempt within the intent and meaning of section 40. * * * A construction which leads to such results we are confident is a violation of the policy and human principles of the exemption laws, and is not to be adopted. It is a cardinal rule in the interpretation of such statutes that they are to be liberally construed in order to promote the object of their enactment. They are intended to benefit the laboring classes, which make up a large part of our society, and to enable them the better to provide for those dependent upon them for support and maintenance. Hence it was in Brown v. Hebard, 20 Wis. 326 [91 Am. Dec. 408], this court held that a debtor whose business it was to inspect flour for merchants in Milwaukee, and who had to employ others to aid him in his work, might claim the net receipts or gains of his employment as 'earnings,' when the labor was performed within the period fixed by statute."

Also, the same author, in Brown v. Hebard, supra, said:

"Section 94 of chapter 134, R. S., provides that in proceedings supplementary to execution the judge may order any property of the judgment debtor, not exempt from execution, in the hands either of himself or any other person, or due to the judgment debtor, to be applied toward the satisfaction of the judgment, except that the earnings of the debtor for his personal services at any time within 60 days next preceding the order cannot be so applied when it is made to appear, by the debtor's affidavit or otherwise, that such earnings are necessary for the use of a family supported wholly or in part by his labor. At

the time this statute was enacted, the earnings of the debtor were not exempt from attachment, garnishee process, or seizure and sale upon execution. Subsequently the act of 1858 (chapter 148, R. S., p. 799) was passed which as amended by chapter 280, Laws of 1861, declares that the earnings of all married persons, or persons who have to provide for the entire support of a family in this state, for 60 days next preceding the issuing of any process from any court of record or Justice of the peace against them, shall be exempt from levy, seizure, or sale upon such process; and the same shall not be liable to be garnished, or seized by attachment, or levied upon by execution, or sold on any final process issued from any court of this state. This last act worked a repeal or modification of section 94, so far as it is inconsistent with that section. By extending the exemption from execution to the earnings of a certain class of debtors for the period of 60 days, absolutely, it rendered the latter clause of section 94, as to the earnings to be excepted, etc., wholly inapplicable to that class of debtors. Debtors of the new class become absolutely entitled to the exemption of their earnings for the period of 60 days under the first clause of the section, by which the power of the judge is limited to the application of the property of the judgment debtor, not exempt from execution.

"A question is made as to the application of the act of 1858. I have no doubt it includes all persons who support themselves by the labor of their hands, without regard to the grade of such labor or the degree of skill and experience required in its performance. I think the act is applicable to the case of the present defendant, who is shown to be a debtor of the class provided for by it.

"The question then is as to the meaning of the word 'earnings,' as found in the act of 1858, without the qualifying words contained in section 94. It is not easy, perhaps, to determine the precise application of this word as used in the statute. I think a correct definition to be, the gains of the debtor derived from his services or labor without the aid of capital. If the debtor has no capital and no credit contributing to increase his profits, except the credit arising from the labor or service in which he is presently engaged and out of the proceeds of which his obligations on account of such labor or service are to be discharged, then I think his net receipts or gains from such labor or service may fairly be accounted 'earnings.' If, for example, the man whose business it is to dig a well, sink a mine, erect a house, run a raft of lumber or a ferryboat, or to perform any of the numerous kinds of work in which the assistance of others is necessary, employs others, as he must do, to assist him, and who are to be paid as he himself is paid, out of the proceeds of the work, it seems to me that what remains after the others are paid must be regarded as his 'earnings.' We all know that there are many men who have a peculiar skill and adaptation to these different kinds

of labor, who, from long application and experience, are qualified to assume the management and control of them and of others engaged in them, and when they do so, under the circumstances stated, why may not their gains, increased perhaps beyond the gains of others who have no skill and experience, be said to be the result of their personal services? I must say that I think they are the 'earnings'—the fruits of the proper skill, experience and industry—of the persons to whom they belong.

"These observations are applicable to and dispose of this case. The net proceeds of the defendant's services as flour inspector, after the payment of his employes, were his 'earnings,' and as such were exempt with the period fixed by the statute.

"The order of the court is affirmed."

We are therefore of the opinion that the part of the fund here which was due by the Stiles Construction Company to Gunn for the services performed by others was subject to the garnishment issued herein; but, for that part which was due to Gunn for services performed by him within 90 days next preceding the garnishment process here, that the same was not subject to garnishment.

There being no dispute in this case as to these various amounts, and it appearing from the evidence that the Stiles Construction Company was due to Gunn the sum of $113.23, and that there was due by Gunn to R. E. Whalin $22, to F. E. Wyman, $21.71, and to C. W. York $7.80, making a total of $51.51.

It is therefore ordered that $51.51 of this fund in the hands of the clerk of the county court of Canadian county be paid to the plaintiff in error and the balance thereof be paid to the defendant in error, C. E. Gunn, and that the costs here be equally divided between the plaintiff in error, Barteldes Seed Company, and the defendant in error, C. E. Gunn.

The judgment of the lower court is therefore modified and affirmed, with directions.

By the Court: It is so ordered.