## OIL WELL SUPPLY CO. v. GALBREATH.

No. 25151. Dec. 17, 1935.

Wimbish & Wimbish, for plaintiff in error.

L. H. Harrell, Robert S. Kerr, and A. M. Kerr, for defendant in error.

PER CURIAM. The parties hereto occupy the same position as in the trial court. The plaintiff procured a judgment against the defendant in the district court of Pontotoc county, Okla., which is unpaid. After execution was issued and returned unsatisfied, the plaintiff caused garnishment summons to be regularly issued and served upon the Fidelity National Bank of Oklahoma City. The garnishee answered that it was indebted to the defendant in the sum of $192.53. This sum was paid to the court clerk of Pontotoc county, Okla., and no further proceedings had against the garnishee. The defendant appeared in the garnishment proceedings and claimed 75 per cent. of this fund as exempt from the operation of the

garnishment process for the reason that it was a part of his wages or earnings for personal or professional services earned within the last 90 days. The plaintiff admitted by stipulation that the amount owing by the garnishee was for wages or earnings for personal or professional services earned within the last 90 days, but contended that no part of the fund was exempt because the defendant, within the last 90 days, had earned approximately $1,800, and had already had and received from his earnings more than three-fourths of the total amount earned, and therefore was entitled to no exemptions. The trial court found that the defendant had earned approximately $1,800 within the last 90 days, but that the exemption applied to the amount due and owing by the garnishee, irrespective of what other sums the defendant had earned and received during that period, and rendered judgment directing the court clerk to pay to the debtor defendant three-fourths of the money in his hands and to pay to the plaintiff, to be applied upon its judgment, one-fourth thereof.

The parties stipulated as follows:

"It is further stipulated and agreed by and between the attorneys hereto that the only question involved in the review of the case is whether or not plaintiff is entitled to recover one-fourth of the amount caught by garnishment proceedings, or whether, under section 1642, O. S. 1931, the plaintiff would be entitled to recover the entire amount caught by said process because the same does not equal or exceed one-fourth of the entire wages or earnings of the defendant for the 90 days next preceding the service of said process.

"It is further stipulated and agreed that the defendant Robert Galbreath, Jr., is a married man and the head of a family."

It will thus be seen that we are not called upon to determine whether or not the fund involved was wages or earnings for personal or professional services of the defendant, or when it was earned. The record presents but a single question, Was the debtor precluded from claiming any exemptions under the statute before referred to because of the fact that during the 90 days preceding the levy of the garnishment process, he had already received from his wages or earnings for personal or professional services more than 75 per cent. of the total amount earned? We are called upon to interpret and construe the exemption statute and to endeavor to ascertain the legislative intent. Section 1642, O. S. 1931, provides that there shall be reserved to the head of every family residing in this state,

among other things, 75 per cent. of his current wages or earnings for personal or professional services, earned within the last 90 days. Section 1645, O. S. 1931, provides that there shall be reserved to persons who are not heads of families, among other things, 75 per cent. of all current wages or earnings for personal or professional services. In this section no time is fixed in which the money should be earned in order to be exempt. The only requirement is that it be "current" wages or earnings. Wages or earnings earned within 90 days might or might not be current according to the facts. There is great diversity in judicial opinions as to what wages or earnings may be regarded as current. After considering the history of exemption statutes, our own among others, we find a general policy to liberalize exemptions in favor of those having dependents, and we are of the opinion that the provision providing for the exemption to heads of families was not intended to restrict their exemptions and deny them entirely if they had received other funds from their wages during the last 90 days, and yet allow the man who had no dependents to exempt his current wages under the same circumstances. To illustrate what we mean: Suppose a married man and a single man were working for the same employer and had been regularly paid every two weeks for a period of ten weeks. They were both garnished and the employer answered that he owed each of them the last two weeks' current wages. The single man unquestionably would have 75 per cent. of his current wages as exempt. But, if we adopt the theory of the plaintiff, the married man could claim no exemption of current wages, because the ten weeks' pay he had received was more than three-fourths of the total he had earned in 90 days. This interpretation of the statute would completely nullify its operation in most cases as to heads of families, but leave it in full force and effect as to persons without dependents. We cannot believe that this was the intent of the Legislature. It is our opinion that the purpose of the 90 days' provision as to heads of families was to broaden and liberalize the definition of "current" wages or earnings. Instead of leaving that question to the court to be determined from the facts in each case, it merely provides that any wages or earnings earned within the last 90 days shall be regarded as current. We do not think it was intended that when the current wages of the head of the family are attached, he should be required to come into court and account for what he had earned and received during any part of

this period and then be denied any exemptions if such accounting showed that he had already received three times as much as the sum attached. The theory of exemption statutes is that the debtor should, at the time of the levy, have the right to claim and reserve the specific property exempted to him. The idea prevailing is that the debtor should not be completely stripped and his dependents left destitute at any time, regardless of how prosperous he may have been previously. Our statute says that there shall be reserved to him a portion of his wages free from attachment. How could there be reserved to him, at the time of the levy, something that he did not then have?

Many of the states have statutes similar in principle. Most of them provide for the exemption of a specific sum if earned within a specified period. The courts are quite unanimous in holding, under such statutes, that the specific sum provided for is exempt out of the amount due and owing at the time of the levy, if it was earned within the specified period, regardless of what other sums the debtor may have earned and received during that period. Some of the cases so holding are as follows: Driscoll v. Kelly, 4 Ohio S. & C. P. Dec. 124; Waite v. Franciola (Tenn.) 16 S. W. 116; Hall v. Hartwell, 142 Mass. 447, 8 N. E. 333; Carr v. Fairbanks, 28 Vt. 806; Collins v. Chase, 71 Me. 434; Bliss v. Smith, 78 Ill. 359; Crites v. Bede, 86 Ore. 460, 168 P. 941.

We are of the opinion that the reasoning in these cases is sound and consistent with the general spirit and intent of exemption statutes. We therefore hold that, under section 1642, O. S. 1931, there shall be reserved to the head of every family residing in this state 75 per cent. of any current wages or earnings due him for personal or professional services if earned within the last 90 days prior to the levy of any garnishment, irrespective of what other amounts than that attached he may have earned or received during that period.

It follows that judgment of the trial court should be and it is affirmed.

The Supreme Court acknowledges the aid of Attorneys Everett Petry, John V. Beveridge, and E. E. Hanson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Petry, and approved by Mr. Beveridge and Mr. Hanson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, WELCH, PHELPS and GIBSON, JJ., concur.