In re Ronald L. CARLSON, Debtor.

Ronald L. Carlson, Appellant,

v.

Andrés Diaz, Trustee, Appellee.

BAP No. UT–03–027.
Bankruptcy No. 02B–41068.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Jan. 6, 2004.

Jory L. Trease of Thomas D. Neeleman, Esq., L.C., Salt Lake City, UT (Thomas D. Neeleman with him on the brief), for Appellant.

Andrés Diaz, Trustee, pro se. (David N. Kelley and Gary E. Jubber of Fabian & Clendenin, Salt Lake City, UT, for former Appellee Gary E. Jubber, Trustee, on the brief).

Before McFEELEY, Chief Judge, NUGENT, and RASURE [1], Bankruptcy Judges.

OPINION

RASURE, Bankruptcy Judge.

Appellant Ronald L. Carlson appeals from an Order Sustaining Objection in which the bankruptcy court denied his

1. Honorable Dana L. Rasure, United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Oklahoma, sitting by designation.

claim to a homestead exemption in the trailer that serves as his primary residence. Appellant contends that the bankruptcy court erred in concluding that Utah's homestead statute grants an exemption in a mobile home only if the claimant also owns the real property on which the mobile home is situated. Although Utah's homestead statute is not a model of clarity, we agree with Appellant that the statute does not require the owner of a mobile home to own land in order to claim an exemption in the mobile home. We therefore REVERSE and REMAND.

## I. *Background*

■ On December 10, 2002, Appellant filed for relief under Chapter 7 of the Bankruptcy Code. Appellant owned and resided exclusively in a 32 foot trailer equipped with the amenities of a home, including furnishings and appliances, and plumbing, heating, air conditioning and electrical systems (the "Trailer"). On the petition date, the Trailer was located at a recreational vehicle park in Utah. Soon thereafter, Appellant transported the Trailer to Arizona where he resided in the Trailer over the winter months.[2] The value of Appellant's equity in the Trailer is approximately $8,000 to $11,000. On his Schedule C ("Property Claimed As Exempt"), Appellant claimed the Trailer exempt pursuant to Utah's homestead statute, Utah Code Ann. § 78–23–3 (2002).

The Chapter 7 Trustee[3] objected to Appellant's claim of exemption in the Trailer, contending that Utah's homestead statute "does not provide for a homestead exemption in a recreational vehicle." Trustee's Objection to Debtor's Homestead Exemption at 2, *in* Appellant's Appendix at 9. Appellant responded that the Trailer "is the debtor's residence and qualifies as a mobile home within the meaning of the state exemption statue [sic]." Debtor's Response to Trustee's Objection to Debtor's Homestead Exemption at 1–2, *in* Appellant's Appendix at 14–15. After a hearing on stipulated facts, the bankruptcy court declined to decide whether the Trailer was a recreational vehicle or a mobile home, or whether a recreational vehicle may be a mobile home, concluding that even if the Trailer qualified as a mobile home, it was not exempt because under the Utah homestead statute, a mobile home may be claimed as exempt *only* if the claimant also owns the real property on which the mobile home is situated.

## II. *Appellate Jurisdiction*

■ Neither party filed an election seeking review by the United States District Court for the District of Utah pursuant to 28 U.S.C. § 158(c)(1) and Bankruptcy Rule 8001(e). A bankruptcy court's order denying a claimed exemption is a final order.[4] Thus, the Bankruptcy Appel-

---

**2.** Although statements in Appellant's brief generated some confusion as to when Appellant and the Trailer moved to Arizona, the Chapter 7 Trustee stipulated below that the Trailer was located in Utah at the time the Appellant filed bankruptcy. Transcript of Hearing of March 5, 2003, at 5, *in* Appellant's Appendix at 30, ll. 16–18. A debtor's right to an exemption is determined as of the date the bankruptcy petition was filed. *See Lampe v. Iola Bank & Trust (In re Lampe)*, 278 B.R. 205, 210 (10th Cir. BAP 2002), *aff'd*, 331 F.3d 750 (10th Cir.2003). Therefore Appellant's subsequent relocation of the Trailer to Ari-

zona for the winter of 2002–03 is not relevant to the resolution of this appeal.

**3.** On June 26, 2003, Appellant's Chapter 7 case was converted to a case under Chapter 13. On November 7, 2003, the Court entered an order substituting the Chapter 13 Trustee for the Chapter 7 Trustee as Appellee.

**4.** *See Clark v. Brayshaw (In re Brayshaw)*, 912 F.2d 1255, 1256 (10th Cir.1990) ("[g]rant or denial of a claimed exemption is a final appealable order from a bankruptcy proceeding"); *Lampe v. Iola Bank & Trust (In re*

late Panel has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1).

### III. *Standard of Review*

■ A bankruptcy court's interpretation of a state statute is subject to *de novo* review. *See Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.)*, 990 F.2d 551, 557 (10th Cir.1993), citing *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) (rejecting the view that an appellate court should defer to the "local" federal court's interpretation of its state law).

### IV. *Discussion*

■ The sole issue on appeal is whether Utah's homestead exemption statute [5] requires the owner of a mobile home to own the land surrounding the mobile home in order to claim an exemption in the mobile home itself.

The statute at issue, Utah Code Ann. § 78–23–3, states in relevant part—

(1) For purposes of this section:

(a) "household" means a group of persons related by blood or marriage living together in the same dwelling as an economic unit, sharing furnishings, facilities, accommodations, and expenses;

(b) "primary personal residence" means a dwelling or mobile home and the land surrounding it, not exceeding one acre, as is reasonably necessary for the use of the dwelling or mobile home, in which the individual and the individual's household reside; and

(c) "property" means:

(i) a primary personal residence;

(ii) real property; or

(iii) an equitable interest in real property awarded to a person in a divorce decree by a court.

(2) (a) An individual is entitled to a homestead exemption consisting of property in this state in an amount not exceeding:

(i) $5,000 in value if the property consists in whole or in part of property which is not the primary personal residence of the individual; or

(ii) $20,000 in value if the property claimed is the primary personal residence of the individual.

(b) If the property claimed as exempt is jointly owned, each joint owner is entitled to a homestead exemption; however

(i) for property exempt under Subsection (2)(a)(i), the maximum exemption may not exceed $10,000 per household; or

(ii) for property exempt under Subsection (2)(a)(ii), the maximum exemption may not exceed $40,000 per household.

(c) A person may claim a homestead exemption in one or more parcels of real property together with appurtenances and improvements.

(3) A homestead is exempt from judicial lien and from levy, execution, or forced sale except for:

(a) statutory liens for property taxes and assessments on the property;

(b) security interests in the property and judicial liens for debts created for the purchase price of the property;

---

*Lampe)*, 278 B.R. 205, 208 (10th Cir. BAP 2002), *aff'd*, 331 F.3d 750 (10th Cir.2003).

5. Utah has opted out of the federal exemption scheme contained in Section 522(d) of the Bankruptcy Code. *See* Utah Code Ann. § 78–23–15 (2002).

(c) judicial liens obtained on debts created by failure to provide support or maintenance for dependent children; and

(d) consensual liens obtained on debts created by mutual contract.

Utah Code Ann. § 78–23–3(1)–(3) (2002).

 This Court begins with the premise, true under state and federal law, that to effect their humanitarian purposes exemption laws must be liberally construed in favor of the claimant of an exemption. *See Lampe v. Williamson (In re Lampe)*, 331 F.3d 750, 754 (10th Cir.2003); *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 522 (10th Cir. BAP 2002); *Homeside Lending, Inc. v. Miller*, 31 P.3d 607, 613–14 (Utah Ct.App.2001). Utah granted its citizens the right to exempt homestead property "to protect 'the dependent and helpless' and to insure such persons shelter and support free from fear of forced sale." *Sanders v. Cassity*, 586 P.2d 423, 425 (Utah 1978), quoting *In re Mower's Estate*, 93 Utah 390, 73 P.2d 967, 972 (1937). *See also P.I.E. Employees Federal Credit Union v. Bass*, 759 P.2d 1144, 1145 (Utah 1988) (purpose of homestead exemption is to "protect citizens and their families from the miseries of destitution").

 Homestead is a creature of legislative largesse. The Utah Constitution requires the legislature to establish a minimum allotment of a citizen's "lands" that are exempt from forced execution. As originally adopted, Article XXII, Section 1 of the Utah Constitution provided—

The Legislature shall provide by law, for the selection by each head of a family, an exemption of a homestead which may consist of one or more parcels of lands, together with the appurtenances and improvements thereon of the value of at least fifteen hundred dollars, from sale on execution.

Utah Const. art. XXII, § 1, as quoted in *Volker–Scowcroft Lumber Co. v. Vance*, 32 Utah 74, 88 P. 896, 897 (1907), and in *P.I.E. Employees Federal Credit Union*, 759 P.2d at 1146.[6] That the constitution only guarantees the exemption of "lands, together with the appurtenances and improvements thereon" does not preclude the Utah legislature from granting a more expansive exemption, however. Recounting the debate at the Utah constitutional convention concerning the parameters of a proposed constitutional homestead exemption, the Utah Supreme Court noted that the provision underwent various modifications until the framers finally agreed to simply set a constitutional floor for such protection. *See P.I.E. Employees Federal Credit Union*, 759 P.2d at 1147. As one participant in the constitutional convention explained—

[W]hy should we undertake to fix these matters of detail for all time, or at least until the Constitution shall come to be amended? [This is a question] of public policy, depending from time to time

---

**6.** The constitutional homestead provision was amended in 1989. It currently states—

The Legislature shall provide by statute for an exemption of a homestead, which may consist of one or more parcels of lands, together with the appurtenances and improvements thereon, from sale on execution.

Utah Const. art. XXII, § 1. The Compiler's Note to the provision states: "The 1988 amendment was proposed by Laws 1988, Senate Joint Resolution No. 4, § 3 and approved at the general election on November 8, 1988, and became effective on January 1, 1989." Utah Const. art. XXII, § 1 (as reported by Westlaw in the UT–STANN89 historical statutes database). Significantly, the constitutional provision continues to relegate to the legislature the duty to enact a homestead exemption statute as the legislature deems appropriate.

upon the condition of the people and the necessities which exist.... That is to say, insist that there shall be the necessary exemptions for the protection of poor debtors, ... but leave that necessity to be determined from time to time by the Legislature, which is better enabled to pass upon the question ... than this Constitutional Convention.

\* \* \* \* \* \*

Now, this constitutional provision simply guarantees that [the homestead exemption] ... shall never be obliterated. It must be maintained in some form or other.... The Legislature, in dealing with this question, would regulate the whole subject with reference to the exemption and necessities of the case.... [J]ust as sure as you undertake now to cover the subject, you will ascertain that you have omitted something, when it is too late, or conditions and necessities of your people may change.

*Id.* at 1147, quoting 2 Proceedings and Debates of the Constitutional Convention for the State of Utah (1898) at 1774–75, 1781–82.

Favoring a flexible concept of homestead, the framers left crafting the definition of homestead and the boundaries of its exempt nature to the legislature, and over the years the homestead statute has evolved as the needs of the people of Utah

have required.[7] Thus, the fact that the Utah Constitution provides for an exemption only in land and things affixed to the land has no significance in determining what type of property is exempt under Utah's current homestead exemption statute.

 To interpret the current homestead exemption statute, the Court must scrutinize the language of the statute and its place in the statutory scheme.[8] "The goal in statutory interpretation is to determine and give effect to the intent of the legislature. To ascertain that intent, it is presumed that a just and reasonable result is intended...." *Boullioun Aircraft Holding Co. v. Denver (In re Western Pacific Airlines, Inc.),* 273 F.3d 1288, 1292 (10th Cir.2001). "The plain meaning of the legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Carbaugh v. Carbaugh (In re Carbaugh),* 278 B.R. 512, 522 (10th Cir. BAP 2002), quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (internal quotes and citations omitted). Further, "the interpretation of statutes must be informed by the policies that structured them." *Id.* As stated above, in the case of exemptions, the articulated policy is to in-

---

7. For instance, at the time the Utah Supreme Court decided *In re Mower's Estate,* 93 Utah 390, 73 P.2d 967 (1937), the homestead statute defined homestead as consisting of "lands and appurtenances not exceeding in value the sum of $2,000, and $250 additional for each minor child," thus surpassing the constitutional minimum of $1,500 as the value exempt from executing creditors. *Id.,* 73 P.2d at 968. The scope and value of the homestead exemption has expanded and increased with various successive amendments to the statute.

8. The Court was unable to locate any case in which the Utah Supreme Court has interpreted the current homestead statute as it relates to the issue before the Court nor did the parties draw the Court's attention to any such case. Thus, the Court's task is to predict how the Utah Supreme Court would interpret the statute under the circumstances of this case. *See Johnson v. Riddle,* 305 F.3d 1107, 1118 (10th Cir.2002) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.")

sure a debtor the ability to maintain basic levels of shelter and support.

To ascertain the intent of the legislature in this case, tracing the evolution of the exemption statute as it relates to mobile homes is instructive. Immediately prior to May 5, 1997, Utah's homestead exemption statute provided that—

(1) A homestead consisting of property in this state shall be exempt in an amount not exceeding $8,000 in value for a head of family, $2,000 in value for a spouse, and $500 in value for each other dependent. A homestead may be claimed in either or both of the following:

(a) one or more parcels of real property together with appurtenances and improvements; or

(b) a mobile home in which the claimant resides.

Utah Code Ann. 78–23–3 (enacted in 1981, as amended in 1990)(as reported by West-law in the UT–STANN96 historical statutes database).[9] Since at least 1981, Utah provided an exemption, up to the statutory amount, for "a mobile home in which the claimant resides" regardless of whether the mobile home dweller owned one or more parcels of real property and regardless of whether the mobile home was affixed to real property. Assuming without deciding that the Trailer is a "mobile home," the Appellant, although landless, would have qualified for an exemption in the mobile home (up to $8,000) under the prior law.

In 1997, the legislature amended the 1981 statute, incorporating the concept of exempt mobile homes into the statute's definition of "primary personal residence." The wording of the definition of "primary personal residence" led the bankruptcy court to conclude that a mobile home was not exempt if the claimant did not own the land beneath it. Appellee argues that the legislature *intended* to change the law in 1997 to strip away the protection then afforded to an entire class of beneficiaries, *i.e.,* those who own a mobile home and rent the land on which the home is situated. Appellant contends that the definition of "primary personal residence" can be read to afford at least the same protection to mobile home owners as they enjoyed under the prior law.

 The search for clues of legislative intent is limited to the language of the amended statute.[10] Effective May 5, 1997, the homestead statute was amended to provide as follows—

(1) (a) An individual is entitled to a homestead exemption consisting of property in this state in an amount not exceeding $10,000 in value if the property claimed is the primary personal residence of the individual.

(b) If the property claimed as exempt is jointly owned, each joint owner is entitled to a homestead exemption; however, for property exempt under Subsec-

9. The 1990 amendment to subsection (1) of the 1981 statute consisted solely of adding "or" between subparts (a) and (b). This amendment may have muddled rather than clarified the definition of property that may be claimed as homestead, however, because while the introductory sentence indicates that a mobile home owner may claim homestead in *both* land and a mobile home, the insertion of "or" between subparts (a) and (b) suggests that only one of the two types of property may be claimed. The current statute remedies that anomaly by clearly providing that *both* a mobile home and land may be claimed. Indeed, the controversy in this case is whether the current statute *requires* the claimant to own both a mobile home and land in order to claim an exemption.

10. The Court is not aware of any published legislative history to assist in this endeavor.

tion (1)(a), the maximum exemption may not exceed $20,000.

(c) For purposes of this Subsection (1), "primary personal residence" means a dwelling or mobile home and the land surrounding it, not exceeding one acre, as is reasonably necessary for the use of the dwelling or mobile home, in which the individual and the individual's household reside.

(d) A person may claim a homestead exemption in one or more parcels of real property together with appurtenances and improvements.

Utah Code Ann. § 78–23–3(1) (1997) (as published by Westlaw in the UT–STANN97 historical statutes database).

In comparing the language of the prior statute to the statute as amended in 1997, it is evident that the legislature intended to accomplish several things. The value of an individual's homestead exemption was increased from $8,000 to $10,000 for property that qualified as a "primary personal residence." The amended statute abandoned the use of "head of family" and "spouse" in favor of the terms "individual" and "joint owner." Rather than designating one owner of jointly owned property as the "head of family" entitled to an $8,000 exemption and the other as a "spouse" entitled to a $2,000 exemption, the amended statute allowed each joint owner of a primary personal residence to claim a $10,000 exemption, regardless of whether the joint owners were married, limited only by a cap of $20,000 per household.[11] Utah Code Ann. § 78–23–3(1)(a) and (b) (1997).

It is also evident that the legislature did not intend to leave mobile home dwellers unprotected. Indeed, the amended statute specifically includes "mobile home" within the definition of "primary personal residence." Utah Code Ann. § 78–23–3(1)(c) (1997). The language of the statute betrays no evidence of a new-found hostility to mobile home dwellers and lacks any indication that the legislature considered a truly "mobile" home less suited to providing shelter than a dwelling fixed to the earth.

Accordingly, in comparing the previous statute with the statute as amended in 1997, the Court cannot conclude that the purpose or intent of the amendment was to eliminate or restrict any exemptions previously enjoyed by Utah residents. Rather, the amendment appears to be designed to conform the law to the realities of modern Utah life by increasing the value of the homestead that may be sheltered and by liberalizing the concept of household to recognize that joint owners of property are not necessarily always married to each other. In essence, the statute as a whole provides greater homestead protection rather than less.

The statute was further amended, effective March 23, 1999, to add the current definitions of "household" and "property," to provide for a homestead exemption in land that is not a primary personal residence, and to double the value of the exemption in a primary personal residence. Utah Code Ann. § 78–23–3 (1999) (as published on Westlaw in the UT–STANN99 historical statutes database). Thus, the legislature *expanded* the statute further to provide even more protection to a claimant's homestead, again apparently sensitive to the fact that the recently estab-

---

11. Although joint owners need not be married, under the current law they are not considered members of a "household" unless they are related "by blood or marriage." Utah Code Ann. § 78–23–3(1)(a) (2002). This leaves open the possibility of a "household" consisting of joint owners who are parent-child, siblings, etc., each of whom may claim a homestead exemption.

lished $10,000 exemption did not offer much refuge. The 1999 amendment also expanded the definition of exempt property to include "an equitable interest in real property awarded to a person in a divorce decree by a court," addressing another vexing modern problem not distinctly covered by the prior statute. Utah Code Ann. § 78–23–3(1)(c)(iii) (1999).

It is against this backdrop of statutory progression that we review the Appellant's claim for exemption and the bankruptcy court's decision. In interpreting the statute, the bankruptcy court concluded that—

> [H]omestead exemptions in this state are exemptions in one or more parcels of real property together with appurtenances and improvements. Subsections A and B divide up those appurtenances and improvements and allocate a certain dollar amount for them depending on whether or not the improvement is the debtor's primary personal residence.
>
> The definition of primary personal residence includes a dwelling or a mobile home and the land surrounding it. I don't see a comma between mobile home and the land surrounding it. And I believe that that definition, read in conjunction with 78–23–3(2)(c) indicates that there has to be some real property involved in this. And that's the way I'm going to interpret this statute, that if there is real property and if there is a mobile home and land surrounding it that is the debtor's primary personal residence, that would qualify as exempt property.
>
> But in this instance there is no real property anywhere dealt with in the facts of this case. And, therefore, upon

that basis I'm going to sustain the objection to the exemption.

Transcript of Hearing of March 5, 2003, at 16–17, *in* Appellant's Appendix at 41–42.

As indicated by the introductory sentence of the bench ruling, the bankruptcy court concluded that the general rule of exemption was contained in subsection (2)(c) of the statute, which states that "[a] person may claim a homestead exemption in one or more parcels of real property together with appurtenances and improvements," and that the balance of the statute contains limitations on and refinements of that general rule. Utah Code Ann. § 78–23–3(2)(c) (2002). In holding that subsection (2)(c) mandated that subsection (1)(b) be interpreted to require the ownership of some land in Utah in order to claim a homestead exemption, the bankruptcy court interpreted the definition of "primary personal residence" in subsection (1)(b)—"dwelling or mobile home and the land surrounding it"—to mean that a mobile home *must* have land surrounding it in order to be a primary personal residence.

This Court concludes, however, that the general rule of exemption is found in subsection (2)(a) of the statute, which states that "[a]n individual is entitled to a homestead exemption consisting of property in this state in an amount not exceeding . . . $20,000 in value if the property claimed is the primary personal residence of the individual." Utah Code Ann. § 78–23–3(2)(a)(ii)(2002).[12] The general rule does not specifically require the ownership of land, just "property." In order to determine whether a claimant owns "property" qualifying for the exemption, subsection (1)(c) provides the following definition—

(c) "property" means:

---

**12.** The Court notes that neither the 1997 or the 1999 versions of the statute lead off with the "one or more parcels of real property" language, which is where one would expect the general rule to appear. In the 1997 statute, that language is contained in subsection (1)(d) and in the 1999 statute (the current statute), it is found in (2)(c).

(i) a primary personal residence;

(ii) real property; or

(iii) an equitable interest in real property awarded to a person in a divorce decree by a court.

Utah Code Ann. § 78–23–3(1)(c) (2002). In this case, subparts (ii) and (iii) of subsection (1)(c) do not apply because Appellant has no real property and is not claiming an interest under a divorce decree, but Appellant may own a "primary personal residence." The full definition of "primary personal residence" is—

[A] dwelling or mobile home and the land surrounding it, not exceeding one acre, as is reasonably necessary for the use of the dwelling or mobile home, in which the individual and the individual's household reside[.]

Utah Code Ann. § 78–23–3(1)(b) (2002).

The Court does not believe that the Utah legislature designed the phrase "mobile home and the land surrounding it" to radically change the law in effect for almost two decades to preclude residents of mobile homes from claiming an exemption in their home unless they own the land surrounding the mobile home. The statute can just as easily be read to provide an exemption in a mobile home *and also* the land surrounding it *if* the claimant is fortunate enough to own such land. The Court concludes that a just and reasonable interpretation of the statute, one that is consistent with the beneficent purpose of exempting the homestead, would allow a mobile home owner to remain, undisturbed by executing creditors, in his or her home regardless of whether that individual had the means or desire to purchase the land beneath the home.

Further, it is not unreasonable to conclude that the phrase "and the land surrounding it, not exceeding one acre, as is reasonably necessary for the use of the dwelling or mobile home" applies to both dwellings and mobile homes, and that the partial phrase "and the land surrounding it" was not meant as a limiting qualifier applicable solely to the term "mobile home." To the extent that the phrase is a limitation, it merely restricts the acreage subject to exemption by those owning a dwelling or a mobile home to an amount ranging from zero to one acre.[13]

In applying the statute to the facts of this case, therefore, one need not ever reach subsection (2)(c), the subsection that heavily influenced the bankruptcy court's decision, which allows a claimant to claim an exemption in "one or more parcels of real property together with appurtenances and improvements." Because Appellant does not own *any* real property, subsection 2(c) is simply not applicable. It is important to recall that the Utah Constitution requires that the homestead exemption statute protect, at a *minimum*, "one or more parcels of lands, together with the appurtenances and improvements." Utah Const. art. XXII, § 1. Rather than serving as the general rule for homestead exemption, one that presupposes the ownership of real estate, subsection (2)(c) merely satisfies the dictates of the Utah Constitution, augmenting the general rule of subsection (2)(a) by allowing a claimant to preserve more than one parcel of real property, *if* the claimant happened to own more than one parcel, so long as the total value sought to be exempt does not exceed the amount permitted in subsection (2)(a).

---

**13.** The statute speaks in terms of land that is "reasonably necessary for the use of the dwelling or mobile home." Utah Code Ann. § 78–23–3(1)(b) (2002). Because mobile homes may be placed on rented land, the statute contemplates a situation in which it is not *necessary* to claim an exemption in any land in order for the claimant to continue to use his or her mobile home.

## V. *Conclusion*

Because we conclude that owning the land surrounding a mobile home is not a prerequisite to claiming the mobile home exempt as homestead under Utah law, we REVERSE the Order Sustaining Objection to Appellant's homestead exemption. Further, because the threshold issue of whether the Trailer is a "mobile home," as that term is used in the homestead statute, was not adjudicated below, we REMAND the matter to the bankruptcy court for further proceedings consistent with this Opinion.