FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

January 30, 2020

Blaine F. Bates
Clerk

NOT FOR PUBLICATION*

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE RAPHAEL GLAPION, | BAP No. WO-19-030 |
| Debtor. | |
| _____ | |
| RAPHAEL GLAPION, | Bankr. No. 18-14920 |
| Appellant, | Chapter 7 |
| v. | |
| JOHN D. MASHBURN, Chapter 7 Trustee, | OPINION |
| Appellee. | |

_____

Appeal from the United States Bankruptcy Court
for the Western District of Oklahoma
_____

Submitted on the briefs.**
_____

Before **NUGENT**, Chief Judge, **MICHAEL**, and **MOSIER**, Bankruptcy Judges.
_____

---

* This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

** After examining the briefs and appellate record, the Court has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. Bankr. P. 8019(b). The case is therefore submitted without oral argument.

**MOSIER**, Bankruptcy Judge.

_____

The issue in this case is whether the Bankruptcy Court erred when it concluded that legal fees in a contingent fee case are earned over the duration of the case. The Debtor appeals that conclusion, arguing that legal fees in a contingent fee case are earned upon receipt. We find no error in the Bankruptcy Court's conclusion of law and therefore affirm.

## I.   FACTUAL AND PROCEDURAL HISTORY

Raphael Glapion (Debtor) is an attorney who represented certain plaintiffs in a civil law suit on a contingent fee basis.[1] That case settled in September 2018, and in November 2018, pursuant to the contingent fee arrangement with the plaintiffs, the Debtor's law firm received the contingent fee (Contingent Fee), which was placed in the Debtor's Interest on Lawyers Trust Account (IOLTA).[2] On November 28, 2018, after the Contingent Fee was received, the Debtor filed a voluntary chapter 7 petition in the Western District of Oklahoma. Although the Debtor did not disclose the IOLTA in his original schedules, John Mashburn, the chapter 7 trustee in the Debtor's case (Trustee), filed a motion for turnover of the funds in the IOLTA (Turnover Motion).[3]

---

[1]     The Debtor represented the plaintiffs in *Callahan v. United Airlines, Inc.*, CIV-2016-0680-M in the Western District of Oklahoma. Appellant's App. at 24.

[2]     For some reason the Debtor's brief states the contingent fee amount is $47,318.66. Appellant's Br. 4. However, Amended Schedules B and C list the fee as $48,362.46. Appellee's App. at 40, 46.

[3]     *Trustee's Motion to Turnover Property of the Estate*, *in* Appellant's App. at 16.

In response to the Turnover Motion the Debtor filed amended schedules, stating that he held $48,362.46 in his law firm's IOLTA, "representing wages or earnings for professional services earned during the last ninetey [sic] (90) days prior to filing bankruptcy."[4] The Debtor also claimed $36,271.85 of the IOLTA exempt pursuant to title 31, section 1(A)(18) of the Oklahoma Statutes, which permits the exemption of seventy-five percent of earnings for professional services earned during the prior ninety days.[5] The Trustee filed an objection to the Debtor's claimed exemption (Objection to Exemption), arguing that the funds were not "wages or earnings" under § 1(A)(18) and were not "earned" during the ninety days prior to the petition date.[6]

On May 8, 2019 the Bankruptcy Court held an initial hearing (Initial Hearing) on the Turnover Motion, Objection to Exemption, and the Debtor's responses thereto.[7] The Bankruptcy Court "orally ruled that contingency fees are generally earned over the life of the underl[y]ing contingency fee contract case as the services are rendered rather than when they are received." [8] The Bankruptcy Court continued the hearing to July 17, 2019 to allow the Debtor to present evidence as to the portion of the fees earned within the

---

[4]     *Amended Schedule A/B* at 3, *in* Appellee's App. at 65.
[5]     *Amended Schedule C* at 2, *in* Appellee's App. at 67; *see also* Okla. Stat. tit. 31, § 1(A)(18) (2018).
[6]     *Trustee's Objection to Debtor's Claimed Exemption*, *in* Appellee's App. at 56
[7]     *Debtor's Objection to Trustee's Motion to Turnover Property of the Estate*, *in* Appellee's App. at 50; *Debtor's Response to Trustee's Ojbection [sic] to Debtor's Claimed Exemption*, *in* Appellant's App. at 19.
[8]     *In re Glapion*, No. 18-14920-SAH, 2019 WL 3294083, at *1 (Bankr. W.D. Okla. July 19, 2019) (unpublished) (citing *In re Carlson*, 211 B.R. 275, 279 (Bankr. N.D. Ill. 1997)).

ninety days prior to the petition date. After the July 17, 2019 hearing, the Bankruptcy Court entered an order sustaining the Objection to Exemption in part and granting the Turnover Motion (Order).[9]

The Bankruptcy Court found that the Debtor had spent a total of 47.5 hours working on the litigation and of those 47.5 hours, only 21 hours of work had occurred during the ninety days prior to the petition date. Accordingly, the Bankruptcy Court found that the Debtor had earned $21,381.30 during the ninety-day exemption period and concluded that, under applicable Oklahoma exemption law, seventy-five percent of that amount, or $16,035.98, was exempt. The remaining twenty-five percent, along with the portion of the Contingent Fee earned prior to the exemption period, which together totaled $32,326.48, were held non-exempt. The Debtor filed a timely notice of appeal of the Order.[10]

---

[9]     *Id.* at *4.

[10]    The Trustee asserted that the appeal was untimely, thereby depriving the BAP of jurisdiction, and filed a motion to dismiss the appeal on that basis. BAP ECF No. 12. He contended that the Bankruptcy Court had rejected the Debtor's initial notice of appeal due to a defect with the signature on the document and the Debtor's amended notice of appeal, which cured the signature problem, was filed after the appeal deadline. A BAP motions panel denied the motion to dismiss, concluding that the appeal became effective upon the filing of the original notice of appeal because "a pro se litigant's failure to sign a notice of appeal is a curable, non-jurisdictional defect." *Order Denying Motion to Dismiss* at 2, BAP ECF No. 27 (first citing *United States v. Jaramillo*, 743 F. App'x 165, 167 (10th Cir. 2018); and then citing *United States v. Phung*, 683 F. App'x 661, 661 (10th Cir. 2017)).

## II.  JURISDICTION AND STANDARD OF REVIEW

An order sustaining an objection to a debtor's claim of exemption is a final order for purposes of appellate review.[11] The Debtor appeals a conclusion of law the Bankruptcy Court made on the record at the Initial Hearing on the Objection to Exemption and Motion for Turnover. "[I]t is a general rule that all earlier interlocutory orders merge into final orders and judgments . . . ."[12] This Court reviews a bankruptcy court's interpretation of a state's exemption statute *de novo*.[13]

## III.  DISCUSSION

The Debtor does not contest any of the Bankruptcy Court's factual findings. The Debtor's only argument is that the Bankruptcy Court erred when it concluded that contingent fees are earned over the life of the underlying contingent fee contract and not when they are received. The Bankruptcy Court stated its conclusions of law on the record at the Initial Hearing, but the Debtor failed to provide this Court with a transcript of that hearing, a failure we need not remedy.[14] This failure is not fatal to the Debtor's appeal, however, because we review the Bankruptcy Court's conclusions of law *de novo*.

---

[11]     *Redmond v. Kester (In re Kester)*, 339 B.R. 749, 751 (10th Cir. BAP 2006) (quoting *Carlson v. Diaz (In re Carlson)*, 303 B.R. 478, 480 (10th Cir. BAP 2004)).
[12]     *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) (citing 16A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Practice & Procedure* § 3949.4 at 72 (3d ed. 1999 & Supp. 2001)).
[13]     *In re Carlson*, 303 B.R. at 481 (citing *Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.)*, 990 F.2d 551, 557 (10th Cir. 1993)).
[14]     10th Cir. BAP L.R. 8009-3 ("This Court need not remedy any failure by a party to designate an adequate record. When the party asserting an issue fails to provide a record sufficient for considering that issue, this Court may decline to consider it.").

## A. The Applicable Law

The Bankruptcy Code allows debtors to exempt property from the bankruptcy estate, but 11 U.S.C. § 522(b)(2) permits states to opt out of the federal exemptions and substitute their own. Oklahoma has elected to do so and has codified its own exempt property rules.[15] When a state has opted out of the federal exemption laws, "bankruptcy courts must resort to state law for interpretation of state exemption rights . . . ."[16] Moreover, because "there is no federal law of property, it is necessary to look to state law to determine the nature, extent, and effect of the debtor's interest" in property.[17]

Oklahoma permits the exemption of "[s]eventy-five percent (75%) of all current wages or earnings for personal or professional services **earned during the last ninety (90) days**, except as provided in Title 12 of the Oklahoma Statutes in garnishment proceedings for collection of child support." [18] Wages or earnings earned prior to that ninety-day period are not exempt under this statutory provision.[19]

---

[15] *See* Okla. Stat. tit. 31, § 1(B) (2019) ("No natural person residing in this state may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of Section 522 of the Bankruptcy Reform Act of 1978, Public Law 95-598, 11 U.S.C.A. 101 et seq., except as may otherwise be expressly permitted under this title or other statutes of this state.").

[16] *Zubrod v. Duncan (In re Duncan)*, 329 F.3d 1195, 1198 (10th Cir. 2002) (quoting *In re Barnhart*, 47 B.R. 277, 279 (Bankr. N.D. Tex. 1985)).

[17] *Id.* (quoting *In re Anselmi*, 52 B.R. 479, 484 (Bankr. D. Wyo. 1985)).

[18] Okla. Stat. tit. 31, § 1(A)(18) (2019) (emphasis added).

[19] Oklahoma law does provide additional exemptions that may, in appropriate circumstances, exempt further wages or earnings. For example, debtors may claim a hardship exemption for "that portion of any earnings from personal services necessary for the maintenance of a family or other dependents supported wholly or partially by the labor of the debtor." Okla. Stat. tit 31, § 1.1(A) (2019); *see also Hillcrest Med. Ctr. v.*

## B. Application of the Law

It is undisputed that the Contingent Fee is property of the Debtor's bankruptcy estate. The issue in this case is what portion of the Contingent Fee is exempt under Oklahoma law, which in turn depends on when the Contingent Fee, or a portion thereof, was earned. The Debtor contends that the entire Contingent Fee was earned within ninety days of his bankruptcy petition because "Oklahoma courts clearly recognize that an attorney's right to recover on a contingency fee contract does not arise until recovery in the underlying case."[20] Although not expressly stated, the Debtor's contention is that contingent fees are not earned until they are received. Stated more simply, the Debtor equates "earned" with "received."

The outcome of this case rests entirely on interpretation of Oklahoma law. "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."[21] If there is no ruling on the issue from the highest state

---

*Monroy*, 38 P.3d 931, 934-35 (Okla. Civ. App. 2001) (reviewing a partial history of the hardship exemption). Such additional exemptions are not at issue in this appeal, however.

[20]    Appellant's Brief in Chief at 5.

[21]    *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (first citing *Comm'r v. Bosch's Estate*, 387 U.S. 456, 464-66 (1967); then citing *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001); and then citing *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 244 F.3d 777, 780 (10th Cir. 2001)); *see also Waldrop v. Discover Bank (In re Waldrop)*, Adv. No. 16-1015-JDL, 2017 WL 1183937, at \*12 n.12 (Bankr. W.D. Okla. Mar. 29, 2017) ("The meaning of a state exemption is controlled by applicable state law, and the bankruptcy court is bound by the state's construction of a state statute." (citing *Goldman v. Salisbury (In re Goldman)*, 70 F.3d 1028, 1029 (9th Cir. 1995))).

court, "federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."[22]

Outside of the contingent fee context, Oklahoma law appears to draw a distinction between the concepts of when one earns a wage and when one receives it. In *Oil Well Supply Co. v. Galbreath*,[23] the Oklahoma Supreme Court faced the question of whether a judgment debtor who had already received at least three-fourths of his earnings during the ninety days preceding a garnishment was entitled to exempt seventy-five percent of a sum sought by a judgment creditor that the parties stipulated did not equal or exceed one-fourth of his wages during the ninety-day period. The *Galbreath* court posed the question in this way:

> Was the debtor precluded from claiming any exemptions under the statute before referred to because of the fact that during the ninety days preceding the levy of the garnishment process he had already received from his wages or earnings for personal or professional service more than 75 per cent. of the total amount earned?[24]

By noting that the debtor had received a percentage of "the total amount earned," the *Galbreath* court recognized that earned wages and received wages are not equivalent; the latter is a subset of the former, since one may earn a wage without having yet received it. The court made this point again in its holding, where it stated that a debtor is entitled to a seventy-five percent exemption "of any current wages or earnings due him for personal

---

[22]     *Johnson*, 305 F.3d at 1119 (quoting *Comm'r v. Bosch's Estate*, 387 U.S. 456, 465 (1967)).

[23]     *Oil Well Supply Co. v. Galbreath*, 52 P.2d 780 (Okla. 1935).

[24]     *Id.* at 781.

or professional services if earned within the last ninety days prior to the levy of any garnishment, irrespective of what other amounts than that attached he may have earned or received during that period."[25]

While earned and received appear to be two different concepts in the typical wage-earner's case, the issue here is whether that holds true with respect to contingent fees. Oklahoma courts have addressed various questions concerning the exemption provision under discussion, its predecessors, and related statutes,[26] but we have not found one that deals with the question of when a contingent fee is earned for purposes of Oklahoma's exemption statutes. In predicting how the Oklahoma Supreme Court would rule on this issue, we are mindful that Oklahoma law directs courts to liberally construe the state's exemption statutes and, as a general rule, to give the debtor the benefit of the doubt.[27]

---

[25]     *Id.* at 782.

[26]     *See, e.g.*, *Warner v. Willard*, 242 P. 550, 552 (Okla. 1925) ("[W]here the exempt wages are withheld from the employee against his demand and over his protest, the exempt character of the wages is not destroyed, even though the exemption period of 90 days has elapsed . . . ."); *Clapp v. Smith*, 216 P. 120, 122 (Okla. 1923) (holding that a cotton farmer was not a wage-earner and therefore could not avail himself of the exemption for wages and earnings earned within the last ninety days); *Barteldes Seed Co. v. Gunn*, 159 P. 502, 503 (Okla. 1916) (allowing a judgment debtor an exemption in money owed to him under a contract to haul construction materials as "earnings for his personal services"); *Youst v. Willis*, 49 P. 56, 57 (Okla. 1897) (denying a hotel proprietor an exemption in monies owed by boarders and guests as "current wages and earnings for personal or professional services earned within the last ninety days" because such monies are not "in any sense the personal or professional earnings of the owner or proprietor").

[27]     *Muskogee Reg'l Med. Auth. v. Perkins*, 888 P.2d 1033, 1035 (Okla. Civ. App. 1994) (citing *Nelson v. Fightmaster*, 44 P. 213 (Okla. 1896)).

The Debtor relies on *Musser v. Musser*[28] for the proposition that a contingent fee is not earned until received. *Musser* was not an exemption case, but one involving a divorce proceeding where the parties contested whether future fees from the husband's work on 400 workers' compensation cases, taken on a contingent fee basis, were part of the marital estate that should be divided between the spouses. The court concluded that those cases were not part of the marital estate because the husband had not received and was "not certain to receive anything under the contingency fee contracts."[29] *Musser* reached that conclusion by reasoning that until the contingency is satisfied, i.e., the client prevails by settlement or judgment and recovers money, any contingent fee merely constitutes potential future income.[30]

*Musser* did not hold, however, that an attorney does not earn a contingent fee until he receives it for purposes of title 31, section 1(A)(18) of the Oklahoma Statutes; *Musser* did not even address that statute. But the court did make some observations that are helpful in determining how the Oklahoma Supreme Court would decide that issue. *Musser* noted that Oklahoma case law "holds that [an] attorney would be entitled to some payment upon *successful* resolution of [a contingent fee] case even though that attorney was no longer employed by the client at the time of resolution."[31] The court went on to review two of its prior precedents, which concluded that "when an attorney is discharged

---

28     909 P.2d 37 (Okla. 1995).
29     *Id.* at 40.
30     *Id.* at 39-40.
31     *Id*. at 40.

before the case results in a money judgment or settlement, the attorney does not recover under the contingency fee agreement, but rather, the attorney receives the reasonable value of his services,"[32] and that "the estate of a deceased attorney is entitled to receive the reasonable value of the services rendered by the attorney under a contingency fee contract for legal work performed by the attorney even though he died prior to settlement of the case by replacement counsel."[33] Other Oklahoma case law has allowed attorneys who have been discharged from a contingent fee case or passed away prior to a case's completion to collect a portion of a contingent fee based on the amount of work performed.[34] In sum, Oklahoma case law has consistently recognized that a lawyer has an "interest" in contingent fee cases before the occurrence of the contingency.

The ability of a discharged attorney or the estate of a deceased attorney to recover the reasonable value of the attorney's services from a successfully-obtained contingent

---

[32]     *Id*. (discussing *First Nat'l Bank & Tr. Co. of Tulsa v. Bassett*, 83 P.2d 837 (Okla. 1938)).

[33]     *Id*. (citing *City of Barnsdall v. Curnutt*, 174 P.2d 596 (Okla. 1945)).

[34]     *See Landsing Diversified Properties-II v. First Nat'l Bank & Tr. Co. of Tulsa (In re W. Real Estate Fund, Inc.)*, 922 F.2d 592, 596-97 (10th Cir. 1990) ("[W]e do not think Oklahoma has embraced or will embrace [the] view that a client whose attorney has already secured a favorable settlement offer can unilaterally reduce counsel's bargained for contingency fee to a (much smaller) hourly 'quantum meruit' recovery simply by breaching their fee agreement before settling the litigation counsel had been employed on."); *Self & Assocs. v. Jackson*, 269 P.3d 30, 33 (Okla. Civ. App. 2011) (explaining Oklahoma courts have long recognized that an attorney working on a contingent fee basis who is discharged from a case without cause is entitled to compensation for services rendered up until discharge); *Martin v. Buckman*, 883 P.2d 185, 194 (Okla. Civ. App. 1994) (holding that where an attorney is discharged without cause, the discharged lawyer is entitled to receive a portion of the ultimate contingent fee in the case, regardless of appointment of subsequent counsel).

11

fee suggests that an attorney earns a portion of that fee when he performs services. He may not ultimately recover anything unless the contingency is satisfied, but we believe, after liberally construing the statute, that the weight of Oklahoma law supports the Bankruptcy Court's conclusion that contingent fees "are generally earned over the life of the underl[y]ing contingency fee contract as the services are rendered."[35] Of course, the calculation of how much of the fee is attributable to an attorney's services can only occur if the contingency has been satisfied, but there is no dispute that that has occurred in this case: The Debtor received the Contingency Fee prior to filing bankruptcy. As a result, it was not error for the Bankruptcy Court to allocate, as a legal matter, the Contingency Fee between the hours the Debtor worked within and without the ninety-day exemption period. We also find no error in the Bankruptcy Court's factual findings regarding the amounts so allocated because the Debtor did not challenge them on appeal.

## IV.   CONCLUSION

Under Oklahoma law, a lawyer has an interest in contingent fee cases before the occurrence of the contingency. Oklahoma case law has allowed attorneys who have been discharged from a contingent fee case or passed away prior to a case's completion, to collect a portion of a contingent fee, based on the amount of work performed. We find no error in the Bankruptcy Court's legal conclusion that contingent fees are generally earned

---

[35]   *In re Glapion*, No. 18-14920-SAH, 2019 WL 3294083, at *1 (Bankr. W.D. Okla. July 19, 2019) (citing *In re Carlson*, 211 B.R. 275, 279 (N.D. Ill. 1997)).

over the life of the underlying contingent fee contract case as the services are rendered rather than when they are received and therefore, we affirm.