**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**November 30, 2017**

**Blaine F. Bates**
**Clerk**

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE JOHN THOMAS BIRD,<br><br>Debtor. | BAP No. UT-16-039<br>BAP No. UT-16-040<br><br>(Consolidated) |
| GARY E. JUBBER, former Chapter 7 Trustee and FABIAN VANCOTT, Counsel to the former Chapter 7 Trustee,<br><br>Appellants,<br><br>v.<br><br>JOHN THOMAS BIRD,<br><br>Appellee. | Bankr. No. 12-17345<br>Chapter 13<br><br><br><br>OPINION |
| IN RE BRENT DAVID CHRISTENSEN and JO-ANN HALL CHRISTENSEN,<br><br>Debtors. | |
| GARY E. JUBBER, former Chapter 7 Trustee and FABIAN VANCOTT, Counsel to the former Chapter 7 Trustee,<br><br>Appellants,<br><br>v. | Bankr. No. 15-29773<br>Chapter 13 |

BRENT DAVID CHRISTENSEN and
JO-ANN HALL CHRISTENSEN,

       Appellees.

National Consumer Bankruptcy Rights
Center and the National Association of
Consumer Bankruptcy Attorneys,

       Amici Curiae.

Appeal from the United States Bankruptcy Court
for the District of Utah

Douglas J. Payne of Fabian VanCott (David P. Billings with him on the briefs), Salt Lake City, Utah for Appellants Gary E. Jubber and Fabian VanCott.

Paul J. Toscano of Salt Lake City, Utah for Appellees John Thomas Bird, Brent David Christensen and Jo-Ann Hall Christensen.

Before **MICHAEL**, **ROMERO**, and **HALL**, Bankruptcy Judges.

**HALL**, Bankruptcy Judge.

      The former Chapter 7 trustee and his counsel appeal the bankruptcy court's *Memorandum Decision*[1] and related orders[2] (together, the "Order") entered in two separate cases on the same legal issue with respect to analogous facts. The cases were consolidated

---

[1]     Appellants' App. at 477.

[2]     *See Order Denying Applications for Compensation*, *in* Appellants' App. at 514, 558.

on appeal for purposes of briefing and oral argument.[3] The Order denies fee applications ("Fee Applications") submitted by the trustee and his counsel for fees and expenses incurred in connection with litigation of claimed homestead exemptions prior to conversion of the cases to Chapter 13.[4] Although the ultimate issue in these cases relates to professional compensation, the underlying facts give rise to more difficult fundamental concerns such as the tension between the bankruptcy system's fresh start policy and payment of unsecured creditors. Moreover, these cases concern the role of a Chapter 7 trustee in finding the balance between those competing interests through objective performance of the duties and responsibilities assigned to him under the Bankruptcy Code. Finding no error in the bankruptcy court's analysis or ruling, we AFFIRM.

## I.    FACTUAL AND PROCEDURAL HISTORY[5]

John Bird ("Bird") filed a voluntary petition for relief under Chapter 7 of the

---

[3]    The Court entered its *Order Joining Appeals* on January 19, 2017, pursuant to motion of the Appellants. BAP ECF No. 14 in BAP No. UT-16-39; BAP ECF No. 13 in BAP No. UT-16-40.

[4]    The Order denied the *Former Chapter 7 Trustee's Application for Allowance of Administrative Expense and for Compensation and Reimbursement of Expenses* filed in each case. *See* Appellants' App. at 363, 1067. The Order also denied the *Verified Application for Allowance of Compensation and Reimbursement of Expenses by Fabian VanCott, Counsel for Former Chapter 7 Trustee and Request for Allowance and Payment of Administrative Claim* filed in each case. *See* Appellants' App. at 374, 1078.

[5]    This factual background is substantially drawn from the Order, *in* Appellants' App. at 477, which is published at *In re Christensen*, 561 B.R. 195 (Bankr. D. Utah 2016).

Bankruptcy Code[6] on October 19, 2015.  On the same day, Brent and Jo-Ann Christensen (the "Christensens") filed their voluntary petition for Chapter 7 relief (Bird and the Christensens collectively, "Debtors"). Debtors are represented by the same bankruptcy counsel, and Gary E. Jubber, an attorney and shareholder in the firm of Fabian VanCott, was appointed Chapter 7 trustee ("Trustee") in both cases. Trustee filed applications to employ attorney Douglas J. Payne and the firm of Fabian VanCott as counsel ("Counsel") in both cases, which were approved by the bankruptcy court.

On Schedule A, Bird listed his residence located at 122 Manilla Drive, Draper, Utah (the "Bird Homestead"), and the Christensens listed their residence located at 6358 Jamestown Ct., Murray, Utah (the "Christensen Homestead") (collectively, the "Homesteads"). Both Homesteads were subject to mortgages and liens well in excess of their scheduled value. The Bird Homestead was scheduled with a value of $240,400, but was encumbered by the following liens: (i) a first mortgage of $133,275.17; (ii) a second mortgage of $20,550.05; (iii) a tax lien in favor of the Internal Revenue Service (the "IRS") of $147,661.33; and (iv) judgment liens totaling $5,383.93.  The Christensen Homestead was scheduled with a value of $351,000, but was encumbered by the following liens: (i) a mortgage of $300,000; (ii) a tax lien in favor of the IRS of $115,531.85; (iii) and a tax lien in favor of the Utah State Tax Commission of $1,962.99.  On Schedule C, Bird claimed a homestead exemption of $30,000; similarly, the Christensens claimed a

---

[6]     All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

-4-

homestead exemption of $51,000.

In December 2015, Trustee objected to Debtors' homestead exemptions, arguing there was no equity in the Homesteads to which the claimed exemptions could attach (the "Homestead Objections"). Trustee did not, however, set the matters for hearing. Notwithstanding that the Homestead Objections were based on lack of equity, after Debtors received their Chapter 7 discharges on January 20, 2016, Trustee filed applications to employ a real estate agent to sell the Homesteads. Debtors filed objections thereto, as well as responses to the Homestead Objections. Additionally, Debtors filed motions seeking an order forcing abandonment of the Homesteads by Trustee (the "Motions to Abandon"), arguing that (i) they were of inconsequential value and burdensome to the estates, and (ii) a sale would not be in the interest of creditors or Debtors. All of these matters were then set for a hearing before the bankruptcy court on February 24, 2016.

Just days before the scheduled hearing, Trustee filed stipulations pursuant to § 506(c) that he had entered into with the IRS (the "Stipulations")[7] and motions to approve the Stipulations (the "Motions to Approve Stipulation").[8] The Stipulations indicated the IRS' consent to sale of the Homesteads pursuant to § 363(f), and further provided the IRS would, pursuant to § 506(c), "carve-out" $10,000 of the proceeds from sale of each of the Homesteads subject to the IRS' liens "for the benefit of the bankruptcy estate to be

---

[7]     *Stipulation Pursuant to 11 U.S.C. § 506(c)*, *in* Appellants' App. at 131, 842.

[8]     *Motions to Approve Stipulation*, *in* Appellants' App. at 160, 865.

distributed in accordance with the priorities of the Bankruptcy Code" (the "Carve-Outs").[9]

Additionally, each Stipulation provided that:

> The IRS hereby subordinates any lien or claim it may have to the [Homestead] and the proceeds from the sale of the [Homestead] to the extent of the Carve-Out and hereby waives and releases any and all claims it may have to the Carve-Out other than those claims it may have as a general unsecured creditor of the estate.[10]

At the February 24, 2016 hearing, the bankruptcy court overruled the Homestead Objections, allowing Debtors' claimed exemptions. After written orders were subsequently entered on March 1, 2016, Trustee then appealed the orders to the United States District Court for the District of Utah (the "District Court"). In the meantime, the bankruptcy court set the Motions to Abandon for evidentiary hearing on March 23, 2016.

On the same day he appealed the bankruptcy court's orders overruling his Homestead Objections to the District Court, Trustee filed motions to sell the Homesteads (the "Motions to Sell"), soon followed by notices to take Debtors' depositions and applications to employ an appraiser. The Motions to Approve Stipulation and Motions to Sell were scheduled for hearing about a month after the hearing on the Motions to

---

[9] The term "carve-out" is frequently used but not often defined. Generally speaking, a "carve-out agreement," is "an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out of its lien position.'" *In re Robotic Vision Sys., Inc.*, 367 B.R. 232, 240 n.23 (1st Cir. BAP 2007) (quoting *In re U.S. Flow Corp.*, 332 B.R. 792, 796 (Bankr. W.D. Mich. 2005)).

[10] Stipulations at 4, *in* Appellants' App. at 131, 845. The Stipulation in Bird's case includes the language "11 U.S.C. § 724(b) and" following "to the extent of." Stipulation at 6, *in* Appellants' App. at 158, 872.

Abandon. The Motions to Sell were premised on sales contracts with a $322,000 purchase price for the Bird Homestead, and a $425,000 purchase price for the Christensen Homestead. Although the sales contract prices for the Homesteads were quite a bit higher than Debtors' scheduled values, they still only exceeded the total encumbrances by a minimum amount – $4,129.52 in Bird's case and $7,505.16 in the Christensens' case.[11] Moreover, the proceeds from sale of the Homesteads would be subject to payment of Trustee's and Counsel's fees and expenses, and additional administrative expenses for the six percent realtor commission and one percent closing costs provided for in the sales contract.[12]

Immediately prior to the bankruptcy court's scheduled March 23, 2016 evidentiary hearing on the Motions to Abandon, Debtors filed objections to the Motions to Sell on basically the same grounds as they did with respect to the Motions to Approve Stipulations.[13] Debtors contended any sale of the Homesteads would leave nothing for their homestead exemptions. At the same time, Debtors filed motions to vacate their Chapter 7 discharges and convert their cases to Chapter 13 (the "Motions to Convert"). Essentially, Debtors were seeking to avoid both Trustee's liquidation of their Homesteads without any payment of their homestead exemptions, and growing legal fees that continued to be incurred in connection with Trustee's appeal of the bankruptcy court's orders overruling

---

[11]    Order at 7, *in* Appellants' App. at 483.

[12]    Appellants' Br. 43.

[13]    Order at 6, *in* Appellants' App. at 482; *Debtor's Objection to Trustee's Motion to Approve Sale of Real Property Free and Clear of Liens*, *in* Appellants' App. at 289, 967.

the Homestead Objections. The Motions to Convert were set for hearing with the Motions to Approve Stipulations and Motions to Sell on April 20, 2016, and the other matters were continued to that date. Debtors also amended their respective Schedules C to remove the claimed homestead exemptions.[14]

At the April 20, 2016 hearing, the bankruptcy court granted the Motions to Convert, and subsequently entered written orders (the "Conversion"). The bankruptcy court's orders granting the Conversion mooted the numerous other pending motions filed by Trustee and Debtors. Trustee's appeals to the District Court of the bankruptcy court's orders overruling his Homestead Objections were also rendered moot when the Motions to Convert were granted and Debtors amended their Schedules C.[15]

About two months following the Conversion, Trustee and Counsel filed their Fee Applications, requesting that such professional compensation be allowed as administrative expenses claims under § 503(c) entitled to priority under § 507, meaning they would be required to be paid in full under Debtors' Chapter 13 plans pursuant to § 1322(a)(2).[16] In Bird's case, Trustee sought fees of $3,634, and Counsel sought fees and costs of $31,110.97, for total compensation of $34,744.97.  In the Christensens' case, Trustee sought fees of $2,765, and Counsel sought fees and costs of $28,998.63, for total

---

[14]     Order at 7, *in* Appellants' App. at 483.

[15]     The District Court ultimately dismissed the appeals in both cases as moot due to the Conversion and Debtors' amendments to their Schedules C to remove the homestead exemptions.

[16]     Order at 8, *in* Appellants' App. at 484.

compensation of $31,763.63. The exhibits attached to the Fee Applications readily indicate that Trustee performed about seventy percent of Counsel's work in both cases.[17]

Debtors objected to the Fee Applications, and on August 16, 2016, the bankruptcy court conducted a hearing. The bankruptcy court denied the Fee Applications in their entirety on the basis that, under § 330(a)(4)(A)(ii), the fees and costs sought were for services neither necessary to administration of the cases nor reasonably likely to benefit Debtors' estates. In determining Trustee and Counsel's services were unnecessary, the bankruptcy court found that, here where the Homesteads had no equity value in excess of liens but were subject to valid homestead exemptions, Trustee had "no obligation to seek carve-outs from secured creditors or sell encumbered property subject to such agreements."[18]

For several reasons, the bankruptcy court also concluded the services provided were not reasonably likely to benefit Debtors' estates, i.e., result in a meaningful distribution to unsecured creditors. First, the bankruptcy court determined the proposed sales of the Homesteads were not authorized by any subsection of § 363(f). Specifically, the homestead exemptions were not subject to a bona fide dispute under § 363(f)(4), and Debtors could not be compelled to accept a money satisfaction under § 363(f)(5). Second, the bankruptcy

---

[17]     *Exhibit "A" to Verified Application for Allowance of Compensation and Reimbursement of Expenses by Fabian VanCott, Counsel for Former Chapter 7 Trustee and Request for Allowance and Payment of Administrative Claim*, *in* Appellants' App. at 383, 1087.

[18]     Order at 14, *in* Appellants' App. at 490.

court reasoned that even if the sales were permitted, Debtors–and not unsecured creditors–would be entitled to the proceeds of the Carve-Outs as payment of their homestead exemptions.

In reaching this result, the bankruptcy court disagreed with Trustee's interpretation of §§ 724 and 522(c)(2)(B), that would permit him, pursuant to a carve-out agreement with a tax lien claimant, to "liquidate the [Homesteads] in order to satisfy the tax liens to the detriment of the Debtors' homestead exemptions,"[19] and that the Carve-Outs constituted a valid § 506(c) surcharge. Finally, the bankruptcy court explained that the Bankruptcy Code's fresh start policy objectives did not support approval of the proposed sale of the Homesteads. In other words, Trustee's proposal would impermissibly subordinate the homestead exemptions because the sale proceeds would go to pay large, unnecessary bankruptcy administrative fees, leaving Debtors with nondischargeable tax claims, no home, and no homestead exemption.

Trustee and Counsel (collectively, "Appellants") now appeal the bankruptcy court's Order.

II.     STANDARD OF REVIEW

Appellants contend the bankruptcy court erred as a matter of law in denying the Fee Applications under § 330, based on its incorrect interpretations of §§ 522(c)(2)(B), 724(b), 363(f) and the Utah homestead exemption statute. A bankruptcy court's decision to

---

[19]     Order at 28, *in* Appellants' App. at 504.

disallow compensation under § 330 is reviewed for abuse of discretion.[20] We apply a

clearly erroneous standard to its factual findings regarding whether services rendered were

necessary to administration of the estate or reasonably likely to benefit the estate.[21]

However, we review "any statutory interpretation or other legal analysis underlying the

[bankruptcy court's] decision concerning attorney fees *de novo*."[22] Additionally, a

bankruptcy court's interpretation of a state statute is reviewed *de novo*.[23]

## III. DISCUSSION

The professional compensation at issue in these cases arises in a somewhat unusual

posture. Although the fees and expenses stem from fairly typical bankruptcy litigation

matters, i.e., the Homestead Objections, the Motions to Sell, and the Motions to Abandon,

the typicalness is complicated by the following. First, there are questions regarding whether

it was appropriate, on the facts presented, for Trustee to attempt to administer the

---

[20]     *In re Commercial Fin. Servs., Inc.*, 298 B.R. 733, 747 (10th Cir. BAP 2003) (citing *In re Miniscribe Corp.*, 309 F.3d 1234, 1244 (10th Cir. 2002)).

[21]     *In re Schupbach Invs., LLC*, Nos. KS-13-077, KS-13-78, 2014 WL 6680122, at *5 (10th Cir. BAP Nov. 25, 2014) (citing *In re Lederman Enters., Inc*., 997 F.2d 1321, 1323 (10th Cir. 1993) and *In re Abraham*, 221 B.R. 782, 785 (10th Cir. BAP 1998).

[22]     *Octagon Res., Inc. v. Bonnett Res. Corp. (In re Meridian Reserve, Inc.)*, 87 F.3d 406, 409 (10th Cir. 1996) (citing *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 323 (10th Cir. 1994)); *see also In re Lederman Enters., Inc.*, 997 F.2d 1321, 1323-24 (10th Cir. 1993).

[23]     *In re Carlson*, 303 B.R. 478, 481 (10th Cir. BAP 2004). *See also Secs. Inv'r Prot. Corp. v. Stellatos (In re Blinder, Robinson & Co.)*, 124 F.3d 1238, 1243 (10th Cir. 1997); *Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.)*, 990 F.2d 551, 557 (10th Cir. 1993) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) (rejecting the view an appellate court should defer to the "local" federal court's interpretation of its state law)).

Homesteads as property of the estate, and for whose benefit such efforts were being made. Second, Debtors have now converted their Chapter 7 cases to Chapter 13 and withdrawn their homestead exemptions. Therefore, if the Fee Applications were approved, Debtors would be required to pay one hundred percent of Trustee's and Counsel's fees and expenses ($34,744.97 total in Bird's case, and $31,762.98 total in the Christensens' case) through their Chapter 13 plans.

These complicating factors necessarily give rise to the competing interests of bankruptcy's fresh start policy for honest but unfortunate debtors and payment of a dividend to unsecured creditors. But more importantly, these cases draw attention to Trustee's critical role in performing the bankruptcy system's required balancing act. We begin with a brief general discussion of compensation for bankruptcy professionals before evaluating the bankruptcy court's determination that the services provided by Trustee and Counsel were neither necessary to administration of the estate nor likely to provide a benefit.

Trustees and other bankruptcy professionals are entitled to compensation for services rendered to the estate, subject to the limitations of §§ 326, 327, and 328. When a professional submits an application for compensation, § 330 requires a bankruptcy court to independently review the requested fees and expenses, regardless of whether any objection has been made to the application. The purpose of the independent review is to ensure that the services provided were necessary, reasonable, and justified. In other words, a bankruptcy court has an obligation to see that bankruptcy estates are administered

efficiently and economically for the benefit of creditors.[24]

The bankruptcy court's scrutiny of professional fee applications is particularly important when, as is the case here, a trustee and/or his firm has been authorized to serve as an attorney or accountant for the estate.[25] Section 327(d) permits this "dual capacity" status. But in light of the fact this recognized conflict of interest provides an opportunity for self-dealing,[26] a trustee may be authorized to serve as counsel only if it "is in the best interests of the estate."[27] Further, because various trustee duties should be performed without the assistance of an attorney or accountant,[28] a bankruptcy court's careful review of applications for fees and expenses is critical in a dual capacity situation.

A bankruptcy court's award of professional compensation is governed by § 330. In general, that section provides:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to section 326, 328, and 329, the court *may* award to a trustee . . . or a professional person employed under section 327 or 1103–
>
> (A) reasonable compensation for actual, necessary services

---

[24]     *In re Peterson*, 566 B.R. 179, 188 (Bankr. M.D. Tenn. 2017).

[25]     Again, the Fee Applications indicate that Trustee personally performed approximately seventy percent of the services rendered by Counsel.

[26]     *In re SonicBlue Inc.,* No. C-07-03482-RMW, 2007 WL 3342662, at *6 (N.D. Cal. Nov. 9, 2007 ).

[27]     11 U.S.C. § 327(d). "Best interests of the estate" usually involve the opportunity for substantial savings and efficiencies. *See SonicBlue,* 2007 WL 3342662, at * 6; *In re Marsh*, No. 12-60195-7, 2013 WL 4501424, at *5 (Bankr. D. Mont. Aug. 21, 2013).

[28]     11 U.S.C. § 328(b). *See also In re King*, 546 B.R. 682 (Bankr. S.D. Tex. 2016); *In re Kusler*, 224 B.R. 180 (Bankr. N.D. Okla. 1998).

rendered by the trustee . . . ; and

(B) reimbursement for actual, necessary expenses.[29]

However, § 330(a)(4) provides that bankruptcy courts shall not allow compensation for services that were not "reasonably likely to benefit the debtor's estate"[30] nor "necessary to the administration of the case."[31] After reviewing the Fee Applications, the bankruptcy court concluded § 330(a)(4) prevented approval of Trustee's and Counsel's fees and expenses.

On appeal, Appellants contend their services were, in fact, necessary and beneficial to administration of Debtors' estates. The Court would note that the distinction between the statutory requirements that the services be "necessary to administration of the estate"[32] versus "reasonably likely to benefit the estate"[33] is not always clear. For example, according to the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"), "[a]n element of whether the services were 'necessary' is whether they benefitted the bankruptcy estate."[34] Nevertheless, we address them separately and in the same order as

---

[29]     11 U.S.C. § 330(a)(1) (emphasis added).

[30]     11 U.S.C. § 330(a)(4).

[31]     *Id.*

[32]     *Id.*

[33]     *Id.*

[34]     *In re Lederman Enters., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993). *See also In re Universal Factoring Co., Inc.*, 329 B.R. 62, 78-79 (Bankr. N.D. Okla. 2005) (explaining that § 330(a)(4) was added to the statute subsequent to the Tenth Circuit's *Lederman* decision, but that "[u]nless the court determines that a service was reasonably likely to

(continued...)

discussed by the bankruptcy court, and agree with its conclusions.

Additionally, Appellants argue the bankruptcy court's conclusions regarding the necessity and benefit of their services were premised on erroneous interpretation of certain statutory provisions, and therefore its rulings cannot stand. We ultimately conclude, however, that the bankruptcy court's determinations regarding necessity and benefit to the estate of the services are well supported and that, even if its statutory interpretations were incorrect, denial of the Fee Applications is not reversible error. Further, Appellants complain that the bankruptcy court's denial of the Fee Applications in their *entirety* is error and they are entitled to some compensation. We disagree.

A.      The Bankruptcy Court Did Not Err in Concluding the Services Were Not Necessary to the Administration of Debtors' Estates.

Underscoring the bankruptcy court's conclusion that the services provided by Trustee and Counsel were not necessary to the administration of the Debtors' estates is a recognition that, on the facts of these cases, abandonment of the Homesteads would have better comported with a Chapter 7 trustee's ultimate duties and responsibilities. The Bankruptcy Code, an abundance of case law, and express language in the Handbook for Chapter 7 Trustees prepared by the Office of the United States Trustee ("Trustee

---

[34](...continued)
confer a benefit upon the estate, the inquiry goes no further, and the fees are not compensable.").

Handbook")[35] all emphatically support the bankruptcy court's decision.

"A chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured."[36] Section 704, which prescribes the duties of a Chapter 7 trustee, directs a trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."[37] To make this possible, § 363 authorizes a trustee, after notice and a hearing, to sell property of the estate "other than in the ordinary course of business."[38] The purpose of liquidating the estate's assets is so that the proceeds may be distributed to the debtor's creditors.[39] But a trustee's duty to liquidate property of the estate is not without its limits. In certain situations, such as when liquidation will result in little to no payment to

---

[35] Executive Office for U.S. Trustees, U.S. Department of Justice, Handbook for Chapter 7 Trustees (Oct. 1, 2012), available at https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-7-handbooks-reference-materials (last visited Oct. 27, 2017). The Trustee Handbook, although not entitled to deference, serves as guidance for how Chapter 7 trustees should fulfill their duties. *In re Nave*, No. 13-72140, 2016 WL 1254688, at *7 (Bankr. C.D. Ill. Mar. 30, 2016).

[36] *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016).

[37] 11 U.S.C. § 704(a)(1).

[38] 11 U.S.C. § 363(b). Further, pursuant to § 363(f), if certain requirements are met, a trustee may sell the estate's property free and clear of any interests or liens therein. *See infra* Section B(2).

[39] *See Harris v. Viegelahn*, 135 S.Ct. 1829, 1835 (2015) (citing 11 U.S.C. § 726).

-16-

the unsecured creditors, the proper course of action is for a trustee to abandon the property pursuant to § 554.[40]

Although the concept of abandonment was not expressly provided for in the early Bankruptcy Acts, it has been long recognized that bankruptcy courts should not administer encumbered property and authorize its sale "unless it is made to appear that there is a fair prospect of the property being sold for substantially more than enough to discharge the lien or liens upon it."[41] Instead, the possession and control of fully or over-encumbered property should be released and surrendered.[42]

As the bankruptcy court explained, even in the face of court rulings condemning such practices, Congress noticed that "some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions."[43] Congress

---

[40]    *In re Schultz*, 509 B.R. 190, 201 (Bankr. N.D. Ind. 2014) (quoting *Mele v. First Colony Life Ins. Co.*, 127 B.R. 82, 85-86 (D.D.C. 1991) ("[A]bandonment provisions are designed to allow the trustee to relinquish assets that would be a financial drain on the estate, or relieve the trustee of the financial burden of administering inconsequential assets that would cost more than they are worth to the estate.").

[41]    *Hoehn v. McIntosh*, 110 F.2d 199, 202 (6th Cir. 1940).

[42]    *Id.*

[43]    *Morgan v. K.C. Machine & Tool Co. (In re K.C. Machine & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987) (noting some "early cases condemned this particular practice in no uncertain terms, and decried the practice of selling burdensome or valueless property simply to obtain a fund for their own administrative expenses.").

responded by adding abandonment provisions to the Bankruptcy Act of 1978, which are

now codified in § 554.[44]  Section 554 provides in pertinent part:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.[45]

Thus, if property is burdensome or of no benefit to the estate, a trustee has the discretion to

abandon such property; and if a trustee does not abandon valueless property, a party in

interest may ask the bankruptcy court to order a trustee to abandon such property.

The Trustee Handbook amplifies the directions from Congress to trustees that are

embodied in §§ 704 and 554. It is a valuable source of guidance because it is prepared by

the Executive Office of the U.S. Trustee Program, which was created "to promote the

integrity and efficiency of the bankruptcy system for the benefit of all stakeholders –

debtors, creditors, and the public."[46] In its introduction to a Chapter 7 trustee's duties, the

Trustee Handbook admonishes:

> A chapter 7 case must be administered to maximize and expedite dividends to creditors. *A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the*

---

[44]     *Id.*

[45]     11 U.S.C. § 554(a), (b) (amending 11 U.S.C. § 554 (1984). *See* Pub. L. 98-353, Title III, § 468, July 10, 1984, 98 Stat. 380).

[46]     *See United States Trustee Program Strategic Plan & Mission*, available at https://www.justice.gov/ust/strategic-plan-mission (last visited Oct. 27, 2017).

*professionals, or unduly delay the resolution of the case. The trustee must be guided by this fundamental principle when acting as trustee.* Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. § 586.[47]

The Trustee Handbook further provides that "a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. A secured creditor can protect its own interests in the collateral subject to the security interest."[48] That guidance is underscored by another of the Trustee Handbook's directives:

In asset cases, when the property is fully encumbered and of nominal value to the estate, the trustee must immediately abandon the asset and contact the secured creditor immediately so that the secured creditor can obtain insurance or otherwise protect its own interest in the property. 11 U.S.C. §§ 554, 704.[49]

A multitude of reported cases reinforces these principles. In fact, as one bankruptcy appellate panel put it, "[i]t is universally recognized, [ ] that the sale of a fully encumbered asset is generally prohibited."[50]

Nevertheless, Appellants contend the Homesteads could have, and should have, been sold because the Carve-Outs negotiated with IRS would result in a benefit to the

---

[47]     Trustee Handbook at 4-1 (emphasis added).

[48]     *Id. See also In re Traverse*, 753 F.3d 19, 25 (1st Cir. 2014).

[49]     Trustee Handbook at 4-7.

[50]     *In re KVN Corp., Inc.*, 514 B.R. 1, 5 (9th Cir. BAP 2016) (citing in part, *Carey v. Paulene (In re Paulene)*, 119 B.R. 727, 728 (9th Cir. BAP 1990); *In re Scimeca Found., Inc.*, 497 B.R. 753, 781 (Bankr. E.D. Pa. 2013)).

unsecured creditors.[51] As support for their argument, Appellants cite several cases,[52] as well as certain language in the Trustee Handbook.[53] While, the Court does not deny Appellants' cited authorities stand for the proposition that the sale of fully encumbered properties may be warranted in some circumstances, it strongly disagrees that those type of circumstances are presented here.[54]

As Appellants point out, the Trustee Handbook acknowledges exceptions to the general rule preventing the sale of fully encumbered assets. Specifically, it states:

> In certain limited circumstances, however, a trustee may properly sell encumbered property that would generate no proceeds for the benefit of unsecured creditors ("fully encumbered property"). For example, a trustee may be able to satisfy in full a blanket security interest on multiple units of property by selling only one unit. Similarly, a trustee may be able to obtain a higher price from an aggregate sale of assets than from selling the assets individually. In a case with other funds available for unsecured creditors, a trustee also may sell fully encumbered property to eliminate a deficiency, if

---

[51] Appellant's Br. 45-48.

[52] *In re Reeves*, 546 Fed. Appx. 235 (4th Cir. 2013); *In re Buerge*, No. KS-13-23-25, 2014 WL 13096941, at *2 (10th Cir. BAP Apr. 2, 2014).

[53] Trustee Handbook at 4-16.

[54] For example, the *Reeves* decision cited by Appellants is based on North Carolina homestead exemption law rather than Utah law, and it also appears the carve out the trustee negotiated with the IRS was significantly higher than the Carve-Outs here (30% of the net proceeds of the sale of debtors' residence otherwise subject to the IRS' lien, which may have been as much as $38,850 ($325,000 fair market value less mortgage of $195,000 x 30%). *Buerge* involved nonexempt stock of closely-held bank holding companies as opposed to a debtor's homestead, and further, the BAP determined only that, in absence of valuation of the property, the bankruptcy court should not have compelled abandonment. *Buerge,* 2014 WL 13096941, at *19.

the secured creditor agrees to waive any unsecured claim for a deficiency in the event the sale does not fully satisfy the security interest.[55]

Clearly, however, while secured creditor carve-outs may be appropriate in certain circumstances,[56] such circumstances are not present in these cases.

Again, we agree with Appellants that the Trustee Handbook does not prohibit carve out agreements with a secured creditor as per se improper, and directs that when administering fully encumbered property, a trustee should obtain an agreement from a secured creditor to recover costs of sale from the collateral pursuant to § 506(c).[57] However, it does make it clear that a carve out negotiation should be undertaken only in appropriate circumstances:

> A trustee may sell assets only if the sale will result in a meaningful distribution to creditors. In evaluating whether an asset has equity, the trustee must determine whether there are valid liens against the asset and whether the value of the asset exceeds the liens. The trustee may seek a "carve-out" from a secured creditor and sell the property at issue if the "carve-out" will result in a meaningful distribution to creditors. The trustee must also consider whether the cost of administration or tax consequences of any sale would significantly erode or exhaust the estate's equity interest in the asset. If the sale will not result in a meaningful distribution to creditors, the trustee must abandon the asset.[58]

---

[55]    Trustee Handbook at 4-16.

[56]    The Trustee Handbook does not provide an exclusive set examples of exceptions to the general rule that a Chapter 7 trustee should not sell fully encumbered assets. Its examples should not be viewed as exclusive circumstances for permissible sales of fully encumbered assets.

[57]    Trustee Handbook at 4-16.

[58]    Trustee Handbook at 4-14.

Thus, carve out agreements are only permitted if they result in *meaningful* distributions to creditors. And the definition of meaningful depends on the totality of circumstances.

As explained by the First Circuit, "bankruptcy courts have defined the equity that justifies a sale of property, consistently and explicitly, in one way: the value remaining for unsecured creditors above any secured claims and the debtor's exemption."[59] This "equity for unsecured creditors"[60] is what authorizes a trustee to exercise his powers of sale under § 363 in the first place, because liquidation should not be for the benefit of the estate's secured creditors. Therefore, a trustee's negotiation of a carve out with a secured creditor as a means of creating the equity necessary to justify the sale of fully encumbered estate property is suspect and presents opportunities for collusion.[61] Here, Trustee and Counsel fees, together with realtor commissions and closing costs, would have totaled at least $57,284.97 in the Bird case ($34,744.97 + $22,540), and $61,513.63 in the Christensens' case ($31,763.63 + $29,750).[62] Unsecured creditors, on the other hand, would have received only $10,000 in each case.[63] Trustee's steps in obtaining the Carve-

---

[59]    *In re Traverse*, 753 F.3d 19, 29 (1st Cir. 2014).

[60]    *Id.*

[61]    *In re Tobin*, 202 B.R. 339, 340 (Bankr. D.R.I. 1996) ("approval of [ ] token 'carve outs' for sole purpose of creating a Trustee's commission for administering secured assets that should have been abandoned [ ] is a practice neither contemplated by nor provided for in the Bankruptcy Code").

[62]    Order at 7-8, *in* Appellant's App. at 483-84.

[63]    $10,000 is a de minimus amount compared to the total unsecured nonprority debt
(continued...)

Outs here in order to sell the Homesteads would shift estate assets away from the IRS to professionals, harming Debtors in the process.[64]

On these facts, sale of the Homesteads undoubtedly violates the Trustee Handbook's directive that estate property should not be sold "where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case."[64] Further, Trustee's attempted sale is in derogation of courts' universal recognition that "the sale of a fully encumbered asset is generally prohibited."[65] We see no need to

---

[63](...continued)
listed by the Debtors on their Schedules. The Christensens listed $1,641,585.98 and Bird listed $539,042.52 in unsecured nonpriority debt. Appellants' App. at 38, 749.

[64]     We also agree with Appellants' position that the Supreme Court's recent decision in *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973 (2017), which reversed a bankruptcy court's approval of a structured dismissal in a Chapter 11 case, does not prohibit all carve out agreements. But Appellants miss the larger point applicable here: *Jevic* stands for the proposition that neither the parties, nor the courts, are free to circumvent the Bankruptcy Code's rules and policies regarding priorities and distributions through manipulation of substantive and procedural protections. *Jevic*, 137 S.Ct. at 986-87.

[64]     Trustee Handbook at 4-1.

[65]     *In re KVN Corp., Inc.*, 514 B.R. 1, 5 (9th Cir. BAP 2016) (citing in part, *In re Covington*, 368 B.R. 38, 41 (Bankr. E.D. Cal. 2006) ("[W]hen an asset is fully encumbered by a lien, it is considered improper for a chapter 7 trustee to liquidate the asset."); *In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000) ("Clearly, the Code never contemplated that a Chapter 7 trustee should act as a liquidating agent for secured creditors who should liquidate their own collateral."); *In re Preston Lumber Corp.*, 199 B.R. 415, 417 (Bankr. N.D. Cal. 1996) ("[A]ctual conflicts of interest [arise] when the trustee sees he can make more money for himself by liquidating collateral for a secured creditor than he can by asserting a claim against the secured creditor on behalf of the estate").

deviate from these firmly entrenched rules here. The numbers in these cases more than

adequately support the bankruptcy court's belief that

> the sale of fully-encumbered property typically benefits two parties: the trustee, who can administer the property and receive a commission on the disbursed proceeds, and the secured party, which has its collateral liquidated without having to undertake the toil and labor of foreclosure proceedings.[66]

As a result, we conclude the bankruptcy court did not err in determining Trustee's and

Counsel's services, for which the Fee Applications sought compensation, were not

necessary to the administration of Debtors' estates.

### B. The Bankruptcy Court Did Not Err in Concluding the Services Were Not Reasonably Likely to Benefit the Estates.

Appellants also contend the bankruptcy court erred in determining the proposed

sales of the Homesteads were not reasonably likely to benefit the estates. On appeal,

Appellants primarily argue the bankruptcy court's conclusion as to the non-beneficial

nature of their services was founded on several erroneous legal determinations: (1) Debtors

were entitled to homestead exemptions even though there was no equity in the

Homesteads; (2) sale of the Homesteads was not authorized by § 363(f); and (3) §§ 724(b)

and 522 do not create exceptions to the homestead exemption. We address these assertions

briefly, but ultimately conclude the bankruptcy court's determination that Appellants'

services were not likely to benefit the estates was not reversible error, regardless of

whether its legal determinations were correct or incorrect.

---

[66]     Order at 13, *in* Appellants' App. at 489.

Our conclusion is based on the totality of applicable statutes and case law and the way in which they relate to one another. Looking at these authorities in combination, three principles stand out. First, exemptions are extremely important to the Bankruptcy Code's fresh start policy, and of these exemptions, the homestead exemption is paramount. Second, a Chapter 7 trustee is duty bound to administer the estate solely for the benefit of creditors. And third, the Bankruptcy Code's objective and priorities control and are not subject to being rearranged by the actions of a Chapter 7 trustee.

The bottom line is that, in light of these principles, we take no issue with the bankruptcy court's conclusion that these Homesteads should have been abandoned by the Trustee, and therefore, find no error in its ruling that Appellants' services were not beneficial to the estate. While sale of the Homesteads might admittedly have benefitted the estates' unsecured creditors to a minimum extent, the proceeds would primarily benefit Appellants and other bankruptcy professionals, to the considerable detriment of Debtors and the exemptions to which they are entitled. As a result, Appellants' services do not meet the compensation criteria of § 330(a)(4)(ii).

1.     <u>Debtors Were Entitled to Claim Homestead Exemptions under Utah Law</u>

Appellants contend the bankruptcy court's decision denying the Fee Applications is reversible because it erroneously interpreted the Utah exemption statute. Instead, they argue that Utah homestead exemptions, which are denominated as specific amounts, are

based on value in the property and not the property itself, and therefore not available to

Debtors absent equity in the Homesteads.[67] We disagree.

The Utah Constitution commands that the legislature shall provide for a homestead

exemption consisting of "lands, together with the appurtenances and improvements

thereon."[68] As a result, the Utah Exemption Act[69] provides in relevant part:

> (2)    (a) An individual is entitled to a homestead exemption consisting
>           of property in this state in an amount not exceeding:
>            . . .
>
>              (ii) $30,000 in value if the property claimed is the
>              primary personal residence of the individual.
>
>          (b) If the property claimed as exempt is jointly owned, each
>          joint owner is entitled to a homestead exemption; however
>           . . .
>
>              (ii) for property exempt under Subsection
>              (2)(a)(ii), the maximum exemption may not
>              exceed $60,000 per household.
>
>          (c) A person may claim a homestead exemption in either or
>          both of the following:
>
>              (i)one or more parcels of real property together
>              with appurtenances and improvements; or

---

[67]    Appellants' Br. 19.  In support of this proposition, the Trustee cites the Utah
Exemption Act, which provides "[a]n individual is entitled to a homestead exemption
consisting of property in this state" not to exceed a certain value. Utah Code § 78B-5-
503(2). Order at 20, *in* Appellants' App. at 496.

[68]    Utah Const. art. XXII, § 1 ("The Legislature shall provide by statute an exemption
of a homestead, which may consist of one or more parcels of lands, together with
appurtenances and improvements thereon, from sale on execution.").

[69]    Utah Code Ann. § 78B-5-501 (2008).

(ii)a mobile home in which the claimant resides. . . .

(3) A homestead is exempt from judicial lien and from levy, execution, or forced sale except for:

(a) statutory liens for property taxes and assessments on the property;

(b) security interests in the property and judicial liens for debts created for the purchase price of the property;

(c) judicial liens obtained on debts created by failure to provide support or maintenance for dependent children; and

(d) consensual liens obtained on debts created by mutual contract.[70]

For purposes of the homestead exemption, property is defined as "(i) a primary personal residence; (ii) real property; or (iii) an equitable interest in real property awarded to a person in a divorce decree by a court."[71]

When a federal court interprets state law, it is required to look to the rulings of the highest state court,[72] and therefore we must initially turn to Utah law. As the Utah Supreme Court has explained, citizens have been granted the right to a homestead exemption "to protect 'the dependent and helpless' and to insure such persons shelter and support free

---

[70]    Utah Code Ann. § 78B-5-503 (2008).

[71]    Utah Code Ann. § 78B-5-503(1)(d) (2008).

[72]    *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.").

from fear of forced sale."[73] In light of that policy, in *Panagopulos v. Manning*,[74] the Utah

Supreme Court held that the statutory right to a homestead exemption is predicated on two

bases or interests in real property– title and possession, and further that the exemption

"protect[s] the physical thing as a whole from lien or sale so long as the exemption

continues."[75] It has further opined that courts "cannot whittle down the exemption by

undermining and cutting at its roots."[76]

On appeal, Appellants argue that when exemptions are limited in amount, only an

interest in the property up to the specified amount is exempted, and not the property itself.

To support their contention, Appellants rely heavily on the Supreme Court's decision in

*Schwab v. Reilly*.[77] In *Schwab*, the Supreme Court ruled value may be recovered for the

estate in an exempt asset beyond the value debtor expressly declared exempt

notwithstanding that interested parties did not file objections. We do not find *Schwab*

applicable, or even particularly helpful, on the facts presented here for numerous reasons.

---

[73]    *In re Carlson*, 303 B.R. 478, 482 (quoting *Sanders v. Cassity*, 586 P.2d 423, 425 (Utah 1978)); s*ee also P.I.E. Emps. Fed. Credit Union v. Bass*, 759 P.2d 1144, 1145 (Utah 1988) ("purpose of a homestead exemption is to protect citizens and their families from the miseries of destitution").

[74]    69 P.2d 614 (Utah 1937).

[75]    *Panagopulos*, 69 P.2d at 620.  *See also Stucki v. Ellis*, 201 P.2d 486, 489-90 (Utah 1949) (holding that other equitable interest in the property may be sufficient to claim a homestead exemption in proceeds of sale of the property).

[76]    *Panagopulos*, 69 P.2d at 620.

[77]    560 U.S. 770, 782 (2010).

First, the issue in *Schwab*, as framed by the Supreme Court, was

> whether an interested party must object to a claimed exemption where, as here, the Code defines the property the debtor is authorized to exempt as an interest, the value of which may not exceed a certain dollar amount, in a particular type of asset, and the debtor's schedule of exempt property accurately describes the asset and declares the "value of [the] claimed exemption" in that asset to be an amount within the limits that the Code prescribes.[78]

Thus the Supreme Court was ruling on a procedural issue in a much different context. Second, in *Schwab*, the exemption at issue was claimed for business equipment as tools of the debtor's trade, not a homestead exemption. Third, the property claimed as exempt in *Schwab* was not subject to any liens or encumbrances. And fourth, the *Schwab* debtor claimed an exemption for the property pursuant to § 522(d)(5)-(6), and thus the Supreme Court was interpreting the Bankruptcy Code, and not Utah law. Accordingly, the Supreme Court's determination in *Schwab* that § 522(d) exemptions are for a debtor's interest in the asset, up to a specified dollar amount, and not the asset itself,[79] does not control the result here.[80]

---

[78]    *Id.* at 774.

[79]    *Id.* at 782.

[80]    Appellants' citations to numerous other cases, including *Rousey v. Jacoway*, 544 U.S. 320 (2005), *In re Sanders*, 39 F.3d 258 (10th Cir. 1994), and *In re Brown*, 851 F.3d 619 (6th Cir. 2017), to support their position regarding the bankruptcy court's misinterpretation of the Utah homestead exemption are also misplaced. Although these cases may contain statements in dicta that tangentially relate to the facts here, they all presented significantly different issues to the courts for decision. In *Rousey*, the Supreme Court ruled that funds in an IRA, up to a certain amount, are exempt within the definition in § 522(d)(10)(E). In *Sanders*, the Tenth Circuit ruled that under § 522(f), the amount of

(continued...)

Under both Utah and federal law, exemption laws must be liberally construed in favor of the claimant of an exemption to effect their humanitarian purposes.[81] The Utah Supreme Court long ago held that the statutory homestead exemption is predicated on title and possession of real property and "protect[s] the physical thing as a whole from lien or sale so long as the exemption continues."[82] It has further opined that courts "cannot whittle down the exemption by undermining and cutting at its roots."[83] Although the Utah homestead exemption is expressed in terms of a limited dollar amount, there is nothing to suggest that the Utah Supreme Court's decision in *Panagopulos* is not good law. Therefore, possession and title allow Debtors to claim valid homestead exemptions, notwithstanding a lack of equity in the Homesteads.

2.     <u>Utah Exemption Statutes and § 363(f) Protect Debtors from a Forced Sale of their Homesteads by Trustee</u>

---

[80](...continued)
a homestead exemption determines the extent to which it is impaired by a lien. And in *Brown*, after a debtor surrendered homestead property rather than claiming it as exempt, the Sixth Circuit ruled that § 522 will not support an exemption on the basis of state-law redemption rights in a piece of property if the proceeds from the sale of that property are "insufficient to satisfy the prior obligations owed to the secured creditors." *Brown*, 851 F.3d at 625. These cases are of little value to our analysis here.

[81]     *In re Carlson,* 303 B.R. 478, 482 (10th Cir. BAP 2004) (citing *Lampe v. Williamson (In re Lampe)*, 331 F.3d 750, 754 (10th Cir. 2003); *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 522 (10th Cir. BAP 2002); *Homeside Lending, Inc. v. Miller,* 31 P.3d 607, 613-14 (Utah Ct. App. 2001)).

[82]     *Panagopulos*, 69 P.2d at 619-20.

[83]     *Id.* at 620.

-30-

Appellants argue the bankruptcy court erred in denying their Fee Applications because Trustee should have been allowed to sell Debtors' Homesteads free and clear under § 363(f) so that payments could be made to unsecured creditors as result of the Stipulations and Carve-Outs with the IRS.[84] We disagree.

Pursuant to § 363,

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[85]

Appellants contend the bankruptcy court erred in determining that none of the five options for sale free and clear under § 363(f) were met. Specifically, Appellants take issue with the bankruptcy court's conclusions that: (1) the Homesteads were not subject to a bona fide

---

[84]    Appellants' Reply Br. 19.

[85]    11 U.S.C. § 363(f).

dispute for purposes of § 363(f)(4);[86] and (2) Debtors could not be compelled to accept a money satisfaction in an amount less that the full amount of Utah's homestead exemption for purposes of § 363(f)(5).[87] We see no flaw in the bankruptcy court's analysis on these points.

Trustee objected to Debtors' claimed exemptions in their Homesteads based on a lack of equity. Subsequent events, however, undercut Trustee's Homestead Objections and resolved the disputes: (1) Trustee received offers for the Homesteads and negotiated the Carve-Outs with the IRS creating equity; (2) the bankruptcy court allowed the Homestead Exemptions;[88] and (3) Debtors' converted their cases to Chapter 13 and amended their Schedules C to remove the claimed exemptions. Thus, no bona fide dispute existed for purposes of § 363(f)(4) that would permit Trustee to sell the Homesteads in absence of Debtors' consent.[89]

---

[86]    Order at 21, *in* Appellants' App. at 497.

[87]    Order at 22, *in* Appellants' App. at 498.

[88]    Trustee appealed the bankruptcy court's orders allowing the Homestead Exemptions to the District Court, but the appeals were mooted. Order at 5 n.10, *in* Appellants' App. at 481.

[89]    The purpose of § 363(f)(4) is to permit sale of estate property free and clear of interests that are disputed by the representative of the estate in order to avoid delays in liquidation of the estate's assets while such disputes are being litigated. *In re Clark*, 266 B.R. 163, 171 (9th Cir. BAP 2001) (citing 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 363.06 (15th ed. rev. 1998)). In other words, a party whose interest is too controversial to warrant protection should not be able to interfere in an otherwise legitimate sale. But here, Trustee should not be permitted to sell free and clear when it is Trustee that created the "§ 363(f)(4) dispute" by objecting to the Homestead Exemptions on the basis of lack

(continued...)

-32-

The bankruptcy court's conclusion that the condition stated in § 363(f)(5) is not met is supported by the Utah statutes. As the bankruptcy court explained, Utah's exemption statute provides that "[a] homestead is exempt from judicial lien and from levy, execution, or forced sale except"[90] in very limited situations. The statute only permits a forced sale of a homestead for purchase-money mortgages, statutory liens for property taxes, judicial liens obtained for failure to pay child support, or consensual liens obtained on debts created by mutual contract.[91] The sales proposed here contained Carve-Outs with the IRS to pay the unsecured creditors a minimum amount. Neither the IRS nor the estate's unsecured creditors are the type of creditor the Utah statute permits to force sell a homestead.

In addition, another Utah exemption statute provides that "[p]roperty that includes a homestead may not be sold at execution if there is no bid which exceeds the amount of the declared homestead exemption."[92] Trustee's sale of the Homesteads would not have generated enough funds to pay Debtors' exemptions, the mortgages, administrative expenses, and tax liens. When read in conjunction with the applicable Utah exemption statutes, § 363(f)(5) does not authorize Trustee to sell Debtors' Homesteads without satisfying their exemption claims.

---

[89](...continued)
of equity, and then subsequently created equity by negotiating the Carve-Outs with the IRS.

[90]     Utah Code Ann. § 78B-5-503(3).

[91]     *Id.*

[92]     Utah Code Ann. § 78B-5-504(5).

### 3. Sections 724 and 522 Do Not Give Trustee Additional Rights

Appellants argue Debtors' homestead exemptions do not trump §§ 522 or 724.[93] According to Appellants, "debt secured by 'a tax lien, notice of which is properly filed' is not subject to exemption."[94] While it is true that property exempt from the bankruptcy estate remains subject to a tax lien perfected before the petition date pursuant to § 522(c)(2)(B), that does not mean Debtors are not entitled to a claim the homestead exemption in the first place, or that the Trustee is entitled to administer and sell exempt property to satisfy such debt or to create a fund for paying administrative expenses.[95]

Appellants also assert "[s]ection 724(b) makes it <u>possible</u> to sell property encumbered with tax liens in a chapter 7 because the IRS 'pays' the estates' administrative fees out of its claims, not the Debtors' or the lower priority creditors's [sic] claims."[96] Appellants overstate the effect of § 724.

Section 724, entitled "Treatment of Certain Liens," provides in part as follows:

> (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title (other than to the extent that there is a properly perfected unavoidable tax lien arising in connection with an ad valorem tax on real or personal property of the estate) and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed--

---

[93] Appellants' Br. 25.

[94] *Id.*

[95] *See In re Quezada*, 368 B.R. 44, 48 (Bankr. S.D. Fla. 2007) (stating § 704(a)(1) only permits a trustee to "collect and reduce to money the property of the estate" not exempt property).

[96] Appellants' Reply Br. 20.

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1)(C) or 507(a)(2) (except that such expenses under each such section, other than claims for wages, salaries, or commissions that arise after the date of the filing of the petition, shall be limited to expenses incurred under this chapter and shall not include expenses incurred under chapter 11 of this title), 507(a)(1)(A), 507(a)(1)(B), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.[97]

Appellants interpret this provision to mean that a homestead exemption does not take precedence over tax liens, and therefore Trustee was entirely justified in seeking to

---

[97]    11 U.S.C. § 724(b).

liquidate the Homesteads, "particularly where, as here, the IRS actively supported a sale and had agreed to a carve-out that would directly benefit general unsecured creditors."[98] Such an interpretation ignores the safeguard provisions of § 363(f).

Section 724 indeed permits subordination of tax liens to the extent of administrative expenses. As is patently obvious, however, the plain language of § 724 does not separately authorize sale of estate property. Instead, it sets forth a mandatory distribution scheme after an otherwise already authorized sale has been conducted. Section 363 is the only basis for authorizing Trustee to sell estate property.[99] Appellants' attempt to use § 724 to effect a "cram down scheme" with regard to Debtors' homestead exemptions should not be allowed.[100]

---

[98]     Appellants' Br. 27.

[99]     *In re Feinstein Family P'ship*, 247 B.R. 502, 508 (Bankr. M.D. Fla. 2000); *see also Wolters Vill., Ltd. v. Vill. Props., Ltd. (In re Vill. Props., Ltd.)*, 723 F.2d 441, 444 (5th Cir. 1984) ("Section 363 defines the rights and powers of the trustee regarding the use, sale or lease of estate property and the rights of third parties with interests in the subject property.").

[100]Perhaps Trustee took his cue from this play book: *The IRS Is Your Friend: How Trustees Can Use Tax Liens To Weave Straw Into Gold*, 29 Cal. Bankr. J. 191 (2007). In that article, the author advocates that "because of the existence of federal tax liens, estates that appear to have no value in fact do have value because the trustee can use the tax liens to trump the debtors' exemptions and create value for the estate." *Id.* The article does not, of course, point out that this procedure also creates a commission for a Chapter 7 trustee under § 326. For support, the author cites to *Grochocinski v. Laredo (In re Laredo)*, 334 B.R. 401 (Bankr. N.D. Ill. 2005), and *In re Bolden*, 327 B.R. 657 (Bankr. C.D. Cal. 2005). Appellants rely on these cases as well. While such cram down procedures may have been allowed in those cases, the decisions of other bankruptcy courts are not binding on the Utah bankruptcy court. Further, we do not find such schemes to be in keeping with the Bankruptcy Code's fresh start policy for debtors, or the Chapter 7 trustee's obligation
(continued...)

The Supreme Court's ruling in *Law v. Siegel*[101] that exemptions can be denied only

on statutory bases enumerated in the Bankruptcy Code underscores the sacrosanct nature of

homestead exemptions. In *Siegel*, the Supreme Court ruled that because § 522(k) prohibits

exempt property from being liable for payment of ordinary administrative expenses, even a

debtor's fraud was not grounds to "surcharge" his homestead exemption to defray

attorney's fees the trustee incurred in overcoming debtor's fraudulent misrepresentations.[102]

Similarly, in *Scrivner v. Mashburn (In re Scrivner)*,[103] the Tenth Circuit held that a exempt

retirement funds could not be surcharged to prevent a debtor who ignored a bankruptcy

court's order to turnover nonexempt distributions from undeservedly benefitting to the

detriment of the estate and creditors.[104] Though Trustee's attempt to sell the Homesteads

here is not strictly analogous to the facts in *Siegel* or *Scrivner*, it would nonetheless have

the same effect—to deprive Debtors of their homestead exemptions on a basis other than

one enumerated in the Code. Moreover,  Debtors in these cases do not stand accused of any

fraudulent or contemptuous behavior. Trustee's scheme to sell the Homesteads by

negotiating Carve-Outs with the IRS is nothing more than an attempt to do indirectly what

---

[100](...continued)
to administer the estate solely for the benefit of creditors.

[101]     134 S.Ct. 1188 (2014).

[102]     *Id.* at 1195.

[103]     535 F.3d 1258 (10th Cir. 2008).

[104]     *Id.* at 1265.

the Bankruptcy Code and Utah exemption statutes prevent him from doing directly.[105]

Accordingly, §§ 522 and 724 do not give Trustee powers enabling him to avoid the §

363(f) requirements for sale free and clear of the Homesteads.

C.    The Bankruptcy Court Did Not Err in Denying the Fee Applications in Their Entirety

Appellants contend denial of the Fee Applications in their entirety was error because

the bankruptcy court did not evaluate "Appellants' actions prior to or apart from the

---

[105]    Appellants take issue with the bankruptcy court's conclusion that § 506(c) provides no basis for the Carve-Outs, stating:

> The bankruptcy court asserts that "§ 506(c) is the chosen statutory vehicle for the [Former] Trustee to receive the Carve-Outs" and that the Former "Trustee and the IRS are attempting to shoehorn their arrangement into § 506(c), but it does not quite fit." *Opinion*, 561 B.R. 195, 215 (Bankr. D. Utah 2016). This vastly overstates the proposed role § 506(c) was to play. It is § 724(b) that allows administrative expenses to be paid before the IRS's tax liens, not § 506(c). More importantly, neither the IRS nor the Former Trustee ever pointed to § 506(c) as authority to pay the general unsecured creditors $10,000 in each case. Rather, the proceeds were subject to the IRS's lien; therefore, the IRS was free to have $10,000 of the proceeds distributed to general unsecured creditors if they wished.

Appellants' Br. 47 n.14.  The Court is perplexed by Appellants' statement in this regard. The Stipulations filed with the bankruptcy court are titled "Stipulation Pursuant to 11 U.S.C. § 506(c)," and specifically recite "the parties wish to stipulate to a carve-out of a portion of the sales proceeds from the [Homestead], pursuant to 11 U.S.C. § 506(c), in order to facilitate a sale of the [Homestead] by the Trustee and also provide unencumbered funds to the bankruptcy estate for distribution to unsecured creditors of the bankruptcy estate." Stipulations at 3, 5, *in* Appellants' App. at 844, 135. Only after the bankruptcy court pointed out that *Siegel* and *Scrivner* clearly prevent any type of surcharge of exempt assets do Appellants now claim no true surcharge is in play.

-38-

proposed sales."[106] Appellants thoroughly brief this issue by again reviewing the

compensation statutes and citing to numerous cases. They do not, however, point out

specific services and associated time entries in the Fee Applications they believe are

compensable, or otherwise provide any details that would assist the Court in making such a

determination. In absence thereof, even a cursory review of the Fee Applications reveals

that, from the very beginning, almost all the services for which Trustee and Counsel seek

compensation were in furtherance of Trustee's inappropriate scheme to sell the

Homesteads,[107] and thus neither reasonable nor necessary under § 330(a)(1).[108] Further,

although fees and expenses that are "unavoidably incurred,"[109] are sometimes deemed

necessary and compensable, nothing suggests that is the case with respect to the fees and

expenses here.

While receiving no compensation at all might seem a harsh result, the Court would

point out that such a result is not uncommon. Compensation of a Chapter 7 trustee under

---

[106]    Appellants' Br. 38.

[107]    In fact, Trustee's very first time entry on the Fee Applications, made in both cases about a week prior to the § 341 meeting, indicates a call to the realtor he eventually sought to employ and analysis of legal issues and sale under § 724. *Fee Applications*, *in* Appellants' App. at 372, 1076.

[108]    After all, pursuant to § 330, courts can only award an attorney employed under § 327 reasonable compensation for "actual, necessary services rendered." *In re Schupbach Invs., LLC*, Nos. KS-13-77, KS-13-78, 2014 WL 6680122, at *8 (10th Cir. BAP Nov., 25 2014).

[109]    *In re Ricci Inv. Co., Inc.*, 217 B.R. 901, 907 (D. Utah 1998) (concluding even if fees are for services that do not benefit the estate, they may be compensable if they were unavoidably incurred).

§ 330(a) is limited by § 326(a) to a certain dollar amount calculated as a percentage of the moneys disbursed or turned over in the case to parties in interest.[110] Courts have often observed that being a Chapter 7 trustee is a "risky business,"[111] since in the absence of assets to liquidate and distribute, the $60 portion of the statutory filing fee set aside for the trustee may be the only remuneration available.[112] Moreover, several courts have held that the limitations in § 326 must be strictly construed, resulting in no compensation for a Chapter 7 trustee when the case is converted to Chapter 13, even if assets will be distributed under a Chapter 13 plan.[113] Compensation of a Chapter 7 trustee's attorney, however, is not subject to the limitations of § 326, and thus it may seem particularly inequitable that Counsel's fees are being denied in their entirety as well, given Counsel

---

[110]     Pursuant to § 326(a), the bankruptcy court may allow a Chapter 7 trustee reasonable compensation under § 330 "*not to exceed* 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, *upon all moneys disbursed or turned over in the case* by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." 11 U.S.C. § 326(a) (emphasis added).

[111]     *In re Mingledorff*, No. 12–41543–EJC, 2015 WL 3897374, at *6 (Bankr. S.D. Ga. June 23 2015) (citing *In re Fischer*, 210 B.R. 467, 469 (Bankr. D. Minn. 1997) (noting trustees are only profitable when they achieve efficiencies by way of volume and make a substantial fee in an occasional case)).

[112]     11 U.S.C. §330(b).

[113]     *Mingledorff,* 2015 WL 3897374, at *7 ("Here, the perceived unfairness of allowing the Chapter 7 Trustee to go uncompensated for work done prior to the conversion is not a determinative factor."); *In re Silvus*, 329 B.R. 193, 207-21(Bankr. E.D. Va. 2005) (noting only Congress may decide whether a different measure of Chapter 7 trustee compensation is appropriate when a case is converted to Chapter 13).

acted at Trustee's direction. But, it bears reiteration that, notwithstanding Trustee's employment of Douglas J. Payne of his law firm, Fabian VanCott, the Fee Applications indicate it was Trustee who performed over seventy percent of the legal services for which Counsel seeks compensation. In our view, this significantly mitigates fairness concerns.

The obvious dictate here is that it makes no sense whatsoever to sell the Homesteads and incur administrative expenses of $57,284.97 in the Bird case,[114] and $61,513.63 in the Christensens' case,[115] in order to get only $10,000 to unsecured creditors and at the same time deny Debtors their Homesteads. Even bankruptcy professionals performing services for an oversecured creditor, whose compensation will be paid from that creditor's own collateral, must exercise some restraint with respect to incurring fees and expenses.[116] In other words, all bankruptcy professionals to be compensated from the estate must exercise billing judgment,[117] so that only "reasonable compensation for actual, necessary services"[118] is sought. In these cases, the actions of Trustee and Counsel fall woefully short of this standard.

---

[114]    Again, this total represents $34,744.97 for services of Trustee and Counsel, and $22,540 for realtor commissions and closing costs.

[115]    Again, this total represents $31,763.63 for services of Trustee and Counsel, and $29,750 realtor commissions and closing costs.

[116]    *In re Fansteel, Inc.*, No. 16–01823, 2017 WL 1929489, at *6 (Bankr. S.D. Iowa May 9, 2017).

[117]    *Id.* at *5 (fees must be "sensibly" incurred); *In re Latshaw Drilling, LLC*, 481 B.R. 765, 799 (Bankr. N.D. Okla. 2012) (counsel must act fairly, prudently, and efficiently).

[118]    11 U.S.C. § 330(a)(1).

## IV.  CONCLUSION

The bankruptcy court did not err in concluding Appellants' services were neither necessary nor beneficial to the estate. Trustee's plan of action from the minute he was assigned these Chapter 7 cases was abundantly clear: he sought to manufacture equity through the Stipulations and Carve-Outs with the IRS in order to sell the Homesteads and generate funds that would primarily benefit Trustee, Counsel, and other bankruptcy professionals, while only minimally benefitting unsecured creditors. Almost all of the services for which Appellants seek compensation are in furtherance of that inappropriate plan. Therefore, the Order denying the Fee Applications in their entirety is not reversible error, and is hereby AFFIRMED.